## FANNING *v.* FANNING.

*(Common Pleas of New York City and County, General Term.    December 5, 1892.)*

**1. DIVORCE—PROOF OF ADULTERY.**

Where plaintiff's case, in an action for divorce, depends on one witness, who is her mother, and manifestly hostile to defendant, and who swears to circumstances, of·doubtful significance, pointing to only one act of adultery by defendant, and he contradicts this witness, the court will not decree divorce.

**2. SAME—EVIDENCE OF PLAINTIFF.**

Under Code Civil Proc. § 831, providing that "a husband or a wife is not competent to testify against the other upon the trial of an action or the hearing upon the merits of a special proceeding founded upon an allegation of adultery, except to prove the marriage," evidence by the plaintiff in a suit for divorce, pointing to her husband's adultery, is incompetent, and will not be considered for any purpose, even if received without objection by defendant.

Appeal from special term.

Action by Emily T. Fanning against Thomas Fanning for divorce.    From a judgment for plaintiff, defendant appeals.    Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Wm. G. McCrea,* for appellant.    *A. G. Cropsey,* for respondent.

PRYOR, J.    Before proceeding to an examination of the evidence on which this judgment depends, it is requisite to recall the interest of the state in the litigation, and to ascertain the degree of proof necessary to a decree of divorce.    "A suit for divorce, although, on the face of the record, a mere controversy between two private parties, is, in truth, a triangular proceeding, *sui generis,* in which the government or public occupy the position of a third party.    *    *    *    What the government does is (1) to protect the rights of persons not before the court, but liable to be affected by the decree or sentence; (2) to guard the interests of the public as to its morals; and (3) chiefly, to see that the *status* of its subjects, who are parties of record, and sometimes their children, is properly determined or established."    2 Bish. Mar. & Div. (6th Ed.) §§ 230, 231.    It follows, therefore, that it is the duty of the court, as representative of the state, to see that the interests of the public and of persons not parties to the record, *e. g.*, children, are not sacrificed or compromised by a sentence of divorce rendered contrary to law or justice.    *Richardson* v. *Richardson,* 30 Amer. Dec. note, 544 *et seq.*    Hence, in divorce cases, the courts have prescribed a mode and measure of proof different from that which suffices for decision in other litigations.    Thus a sentence of divorce will not be granted by default, (rule 37, General Rules of Practice,) nor " be given upon the sole confessions of the parties," (*Lyon* v. *Lyon,* 62 Barb. 138,) nor upon "the uncorroborated evidence of prostitutes and private detectives," (*Moller* v. *Moller,* 115 N. Y. 466, 22 N. E. Rep. 169;) nor is the testimony of a party competent evidence of the fact of adultery, (Code, § 831.[1])    It is settled also that, "although presumptive evidence alone is sufficient to establish the fact of adulterous intercourse, the circumstances must lead to it, not only by fair inference, but as a necessary

---

[1] The material part of Code Civil Proc. § 831, is as follows:  "A husband or a wife is not competent to testify against the other upon the trial of an action or the hearing upon the merits of a special proceeding founded upon an allegation of adultery, except to prove the marriage."

conclusion. Appearances equally capable of two interpretations, one an innocent one, will not justify the presumption of guilt." *Pollock* v. *Pollock*, 71 N. Y. 137. And that "a divorce should not be granted without evidence which is, after careful scrutiny, satisfactory, and can command the confidence of a careful, prudent, and cautious judge." *Moller* v. *Moller*, 115 N. Y. 466, 22 N. E. Rep. 169.

With these rules for our guidance, we proceed to inquire whether the evidence upon which the judgment under review was rendered be sufficient in law to sustain it. But a single act of adultery is charged, and that is made probable by no evidence of carnal inclination or significant familiarities between the defendant and the alleged paramour. The fact, if it be such, stands alone, without antecedent or concomitant or subsequent circumstance of corroboration. Moreover, but one witness testified to the adultery, and that witness was not only the mother of the plaintiff, but was manifestly inflamed with the fiercest animosity against the defendant. Plainly, the evidence in support of the fact challenges the most jealous and suspicious scrutiny. Now, what was that evidence? The summary in the respondent's brief gives it with all possible effect: "The respondent's witness, Mrs. Doyle, testified that at about half past eight o'clock in the evening of about Decoration day, 1891, she saw the appellant in his store on Railroad avenue, near 170th street, in the act of putting out the lights, and that about three quarters of an hour after the lights had been put out she saw a woman come out of the rear of the same store, and go towards the lots towards the rear. That she knew such woman was not the respondent. That shortly thereafter she saw the appellant locking the door of the same store, when his pants were not fastened up, his necktie was undone, and his vest was unbuttoned, with the exception of three buttons. But this witness then and there reprimanded the appellant for his having been found in such a predicament as he appeared to be in, whereupon he said to the witness: 'I was locked up in the store with a woman, and it is none of your damned business. Now go and find out who it was.'" It should be remarked that the things the witness professes to have seen she observed at night, and from a distance of 20 or 25 feet. The story of plaintiff's witness was flatly contradicted. The defendant testified: "I had no woman in my store that night. No other woman than my wife was in my store on the night I am charged with having committed adultery. I did not have sexual intercourse with any woman in that store that night, or any other place; not that night or any other night. I have not committed adultery with any one. When I came out of that store my clothes were not open or disarranged. They were just the same as they are now, only I did not have so much clothes on. I did not admit to my wife's mother, or to my wife, that night that I had a woman in my store. I told my wife's mother at the hydrant, where I was getting my wife a bottle of sarsaparilla that she wanted out of the store, that she was as big a fool as the daughter was. That was all the conversation I had. They ordered me out of the house, and I went." Mrs. Gahan, apparently a disinterested witness, testified: "I was sewing, and I heard glass break, and I put my needle into the work, and jumped from the table, and ran to the door, and opened it. As I opened the door I saw Mrs. Fanning fly past my door from the rear portion of the house. *Question.* Where did she go? *Answer.* Went to the store door, where Mr. Fanning stood, and accused him of having a woman there. Mr. Fanning told her to go in and see, and she declined to go in. She grabbed him by the face, and called him a 'dirty loafer,' and says, 'If you ever come into my house again, I will shoot you.' They both started from the store door down to the corner. Whether they separated or not I could not say. There was nothing about Mr. Fanning at that time to attract my attention. I could not tell which way he was dressed. I stood in my door, and his door was about twenty-five feet from me. I saw him, and he looked

about the same as the time he came home in the afternoon with feed. She was in the store the time he came with the feed, and gave him a scolding. I did not see any woman or anybody else. That was Mrs. Fanning I saw coming from the rear part of the store." Upon due consideration, we are unable to avoid the impression that the evidence is altogether insufficient to establish the fact of adultery. It falls short of the measure of proof prescribed by courts as necessary to authorize a decree of divorce. We have said that the adultery is shown by but a single witness; not so, however. The plaintiff herself was allowed to give evidence of the fact,—"I saw him let the woman out of the back door,"—a pregnant circumstance, if true, in corroboration of her only witness, and in contradiction of the witnesses for the defense. True, the evidence was received without objection, but it was incompetent evidence, and, as guardian of the interests of the public and persons not parties to the record, it is our imperative duty to prevent the dissolution of the marriage relation by means which the law condemns and expressly forbids. An infant child is issue of this marriage, and we cannot tolerate that its character shall be sullied, and its career clouded, by a judicial conviction of the father on such evidence of infidelity to the most sacred of obligations. Since the "common-law marriage," so-called,—another name for concubinage,—is obtrusively prevalent in the community, and our calendars are crowded with applications for divorce, it behooves us not to relax the stringency of the rules which, in the interest of good morals and social security, have been prescribed by law for the safeguard of the sanctity and stability of the marriage relation. The judgment is reversed, and a new trial ordered. All concur.