Mary Lavelle, Respondent, v. Ellen Corrignio and Another, Appellants; The Home for the Aged of the Little Sisters of the Poor and Others, Respondents.

*Weight of testimony — reversal of a verdict rendered upon conflicting evidence — statute of a sister State — granting of a new trial in a case involving more than one issue — action of partition — finding of the jury upon questions of fact — setting aside a verdict.*

The testimony of a witness who has been for many years an inmate of a house of ill-fame should not favorably impress a jury, as against the testimony of more credible witnesses.

The General Term is reluctant to interfere with the findings of a jury upon conflicting testimony where the jury has had the advantage of seeing the witnesses testify and observing their demeanor, but that rule does not apply in its full force where the conflicting testimony was before the jury in the form of written depositions, in which case the General Term is as competent to pass upon the credibility of witnesses so examined as is the jury itself.

If it is material in an action to show what is the statute law of a sister State upon a given point, the existence of such statute must be established upon the trial by competent proof.

With respect to questions of fact which go to make up an issue, when the decision on one of these, if set aside, would necessarily result in the setting aside of other questions of fact connected with it and tending to sustain the verdict, all questions connected with the same issue necessarily fall with it if a new trial be granted. The position is, however, entirely different where there are separate and distinct issues. In such a case, granting a new trial as to one issue does not necessarily affect the others.

The issues in a partition action are triable of right by a jury, and section 970 of the Code of Civil Procedure makes the finding of the jury upon each question of fact arising upon the issues submitted to them conclusive upon the court unless the verdict is set aside or a new trial is granted, but, since in such an action there may be any number of distinct issues, each made up of independent questions of fact, there is nothing to prevent the court from setting aside the verdict of the jury upon any one of the issues, and for this purpose there may be deemed to be as many verdicts as there are issues in the action.

Van Brunt, P. J., dissenting.

Appeal by the defendants, Ellen Corrignio and another, from an order of the Supreme Court, made at the New York Circuit and entered in the office of the clerk of the county of New York on the 22d day of October, 1894, denying the defendants' motion for a new trial made upon the minutes as such order was resettled by an order made at the New York Special Term, and entered in said

clerk's office on the 12th day of December, 1894, and also from an order made at the New York Special Term and entered in said clerk's office on the 26th day of January, 1895, denying the defendants' motion for a new trial on the ground of newly-discovered evidence.

*J. Brownson Ker*, for the appellants.

*Henry Cooper*, for the plaintiff, respondent.

*William T. Schley*, for the respondents, The Home for the Aged, etc., and others.

O'BRIEN, J. :

This action was brought for the partition of certain real estate in the city of New York, the property in her lifetime of one Ann Owens. Upon her death Ann Owens left her surviving two sisters, Mary Hardy, who died without issue shortly after the death of Ann Owens, and Rosanna Coy, born Hardy, who died in 1867, leaving her surviving three children, Ellen, Catherine and Mary Ann Coy. Ellen Corrignio and Mary Isabella Corrignio, though not originally parties to the action, were brought into it upon their own motion, claiming that they were the children and sole heirs at law of Mary Ann Coy, who, as we have seen, was a niece of Ann Owens. The question whether the Corrignios were the children of Mary Ann Coy was, with a number of other distinct issues framed in the action, left to the jury, and their verdict was against the claim advanced by the Corrignios ; and it is upon the ground that such verdict was against the weight of evidence, and upon the further ground of newly-discovered evidence, that the two motions were made for a new trial, from the denial of which appeals are taken. In disposing of the first, viz., the motion for a new trial upon the minutes, a reference to the facts is necessary.

It was conceded that Mary Ann Coy was a niece of Ann Owens, and in order to establish their claim of heirship to Ann Owens it was, therefore, only necessary for the Corrignios to show that they were the children or issue of Mary Ann Coy. To prove this they produced the testimony of their father, their own testimony and that of five other witnesses not related to them, all of which was taken by commission in New Orleans, where the Corrignios live. Their testimony, in substance, was that Ellen and Mary Isa-

bella Corrignio were the children, born out of wedlock, of Mary Ann Coy and Dimitry Corrignio; that, up to the time of the death of their mother in 1877, they had always lived with and been recognized by her and Dimitry Corrignio as their children, and by their aunts, Ellen Ponds (formerly Coy) and Catherine Coy, as their nieces; that since the death of their mother they have resided with their father and been treated by him and by their neighbors as the children of Dimitry Corrignio and Mary Ann Coy; that in 1877, while their mother was on her deathbed, a clergyman of the Greek church was sent for and a marriage was solemnized between Mary Ann Coy and Dimitry Corrignio, for the express purpose of legitimating the three children who had been born to them out of wedlock; one of them, Dimitry, Jr., died soon after the death of Mary Ann Coy (or Corrignio). Two of the witnesses stated that they were present when the ceremonial marriage took place at her deathbed, between Mary Ann Coy and Dimitry Corrignio in 1877; that they were there as witnesses, and it was then stated that one of the reasons for the marriage was the desire both had of legitimating their three children, Ellen, Mary Isabella and Dimitry, Jr. These witnesses also testified to the fact that they had known the children since they were born, and knew that they had lived with the man and woman whose marriage they witnessed, and that the latter had always spoken to and of them as their children. In addition, there was produced the certificate of the marriage, taken from the records of the church, which states that the marriage was had for the purpose of legitimating the three children who had been born out of marriage, naming them and giving their ages; and also the baptismal certificate of Ellen, also from the records of the church, showing that she was baptized as a child of Dimitry Corrignio and Mary Ann Coy, and that their father and mother were both present at the baptism. These certificates are fortified by the testimony of the clergyman who furnished them and who states that they are correct extracts from the records of his church. We have also the testimony of the clergyman who performed the marriage ceremony, which corroborates that of the witnesses in reference to the solemnization of the marriage and the purposes for which it was done.

As against these eight witnesses and this documentary evidence, we have the testimony of Ellen Ponds and Catherine Coy, who, as we have stated, were the two sisters of Mary Ann Coy. Their testimony was taken before the Corrignios had been made parties to this action, and is to the effect that their sister, Mary Ann Coy, died without issue. Of these two, the one in the best position to know was Catherine Coy, who it appears was accustomed frequently to visit her sister Mary Ann during her lifetime; whereas between the Corrignios and Ellen the same custom of visiting did not prevail, and althought she visited her sister at intervals and thus must have had some knowledge of the situation and surroundings of Mary Ann Coy, yet she was not in as good position to know the household of the Corrignios and how it was made up as was her sister Catherine. Ellen Ponds' testimony was that Mary Ann Coy left no issue that she knew of, and that of Catherine was to the effect that Mary Ann died without issue. This witness, however, was not one that should impress a jury as against more credible witnesses, it appearing that for many years she has been an inmate of a house of ill-repute.

It may be said with respect to all the witnesses introduced that they were not present at the birth of these children and their testimony was hearsay, and that it does not appear but that they were, by reason of their friendship to the Corrignios, to some extent interested in their favor. But conceding all this, we must nevertheless keep in mind the fact that relationship such as is here sought to be established, in most cases, in the absence of better evidence, is required to be established by hearsay, and in this respect the Corrignios are in no different position from that of some of the other parties to this case. But if we eliminate the testimony of the father and of the girls themselves and all the other witnesses except that of the two clergymen and the church records, we fail to see why that was not sufficient to have inclined the jury in favor of the Corrignios, considering that the only evidence against them was the testimony of their two aunts, and that taken as a whole very uncertain in quality. The records were made, one in 1877 when Mary Ann Coy was married to Dimitry Corrignio, which fact was abundantly proved and about which there is no dispute, and the other upon the baptism of the child Ellen Corrignio, both of them being made at

a time when it could not have been foreseen that they were ever likely to be available or of use in establishing the right of the persons affected thereby to any interest in the property of Ann Owens. These records, fortified as they are by the statement of the person who now has possession of them, that they are true records of his church, corroborated by the clergyman who performed the marriage ceremony, who testifies that he remembers the circumstances and that the statement in the records is correct, are rather strong evidence in favor of the claim advanced by the Corrignios and entitled to great weight by a jury, as against that of two sisters, one of whom is now to be discredited, and the other of whom upon insufficient knowledge merely stated that her sister Mary Ann Coy left no issue that she knew of. It may be, as suggested by the respondents, that a good deal of the testimony in support of the claim of the Corrignios has been manufactured; but certainly there is nothing, so far as the testimony of the clergymen and the records of the church are concerned, that in the slightest way would indicate that either spoke falsely.

It is the undoubted rule that this court is always reluctant to interfere with the findings of a jury upon conflicting testimony, where the jury has had the advantage of seeing the witnesses testify and observing their demeanor. But that rule in its full force does not apply here, because the testimony bearing upon the question of heirship was before the jury in the form of written depositions, and this court is as competent to pass upon the credibility of witnesses so examined as the jury itself. Such depositions clearly show, as we have already pointed out, that Mary Ann Coy was married to Dimitry Corrignio, and that Ellen and Mary Isabella were raised by them as their children; that the church records, which were made at a time when it cannot be assumed that any one could have regarded them as valuable for the purposes of this suit, speak in favor of their claim to be the children of Mary Ann Coy. We know, on the other hand that, in addition to the testimony against this claim to which we have adverted, there are many suspicious circumstances, such as the statement by the father of his age when the youngest of the children was born, and the neglect to assert the claim with promptitude, and the failure when they became parties to the suit to attempt the destruction of the evidence

FIRST DEPARTMENT, APRIL TERM, 1895. [Vol. 86.

against them which had grown up from the testimony of Ellen Ponds and Catherine Coy, which had been taken and was on file as a matter of record.

In view of the evidence adduced for and against the claim of the Corrignios, there was a question of fact for the jury; and we think the jury failed to appreciate the force of the evidence furnished by the church records, which, if credible, strongly corroborated the other five witnesses, who, as against the two on the other side, gave testimony tending to support the Corrignios' claim. If there is anything wrong about such records, a new trial will afford the respondents an opportunity to show it, and, by the cross-examination of the witnesses produced against them by the Corrignios, the opportunity will be given of testing the weight to be attached to such evidence. The entire record enforces the conviction that the case on both sides was poorly tried. The parties all agreed that Ann Owens had died, but when is not made clearly to appear. So, too, in regard to the law of Louisiana, which, it is claimed, provides that the subsequent marriage of parents of children born out of wedlock legitimatizes the children — if that is the statute law of Louisiana, which we have no reason to doubt, its existence should have been established upon the trial. (*Miller* v. *Miller,* 91 N. Y. 315.) We think, therefore, that justice demands that a new trial should be had. As well said by CHARLES P. DALY, Ch. J., in *Clark* v. *Mechanics' Nat. Bank* (8 Daly, 504): "Juries are not infallible; they are individually and collectively subject to the ordinary infirmities of human nature, and cases do occur where, if the court did not interpose and set aside the verdict, it would amount to a denial of justice. By doing so no right is taken away. The effect of setting aside the verdict is simply to subject the case to further consideration by another jury, and even this has its limits. * * * This supervisory authority over the verdict of a jury, even upon a question of fact, is a most salutary one, and, in the language of Graham, no lover of justice would wish to see it crippled or narrowed, as it might otherwise be in the power of juries to trample upon justice."

A new trial need only be granted with respect to the issue raised as to the heirship of the Corrignios, no necessity existing for setting aside the verdict upon the other issues between the plaintiff and the other parties to the action, because that as to the Corrignios being

heirs of Ann Owens was one entirely distinct from any other issue in the case. The Corrignios do not question the correctness of the verdict of the jury upon the issues raised by the other parties to the action, and since the verdict was entirely favorable to those other parties, upon the new trial the controversy as to the Corrignios can be disposed of without disturbing the verdict upon those points as to which all parties agree it was correct. We think the appellants are right in their contention that the error into which the respondents have fallen in assuming that, if a new trial is to be granted to the Corrignios, this will result in great hardship by requiring a new trial upon all the other issues in the case, arises from their failure to distinguish between the issue in the action and the questions of fact which go to make up such issue. It is undoubtedly true that, with respect to questions of fact that go to make up an issue, where one of these if set aside would necessarily result in the setting aside of other questions of fact connected with it and tending to sustain the verdict, all questions connected with the same issue would necessarily fall with it if a new trial were granted. The position, however, is entirely different where there are separate and distinct issues. In such a case granting a new trial as to the one does not necessarily involve the others ; and where, as here, all the parties agree that the verdict upon all other points was right, it would be useless to have the parties again go through the form of establishing what nobody is contending against. We think, as urged by appellants, that the issues in a partition action, being triable of right by a jury, section 970 of the Code of Civil Procedure makes the finding of the jury upon each question of fact arising upon the issues submitted to them conclusive upon the court, unless the verdict is set aside or a new trial is granted ; but since in such an action there may be any number of distinct issues, each made up of independent questions of fact, there is nothing to prevent the court from setting aside the verdict of the jury upon any one of these issues, and for this purpose there may be deemed to be as many verdicts as there are issues in the action. (*Vermilyea* v. *Palmer*, 52 N. Y. 471; *Birdsall* v. *Patterson*, 51 id. 43.)

Our conclusion, therefore, is that there should be a new trial upon the condition that appellants pay all the costs of the action and the disbursements included in the judgment.

Although we have discussed, it may not be necessary to decide, the question as to whether, upon setting aside the verdict, a new trial should be granted with respect to all the issues or only the one raised as to the heirship of the Corrignios, for the reason that, as the correctness of the verdict, except as to that issue, is not now disputed by any of the parties to the action, the Corrignios upon such new trial can stipulate as to the existence of such undisputed facts, and thus leave the simple question as to their relationship to Ann Owens to be disposed of.

Since the trial Catherine Coy has made an affidavit that the testimony given by her was under a misapprehension as to the questions asked her, and that she did not intend to swear, and if she did it was untrue, that the Corrignios were not the children of her sister. It is upon the change which she would thus seek to introduce between her evidence given upon the trial and this statement, that the motion for a new trial on the ground of newly-discovered evidence is based; and it is insisted that this evidence is newly discovered because in no way could the defendants have procured it upon the trial. A question is presented as to whether, since giving her testimony upon the trial, she has not parted with her interest, leaving her, therefore, if of easy conscience, to swear as she may for the time incline. But in view of the conclusion reached upon the other ground it is unnecessary to decide this motion.

The order denying the motion on the ground of newly-discovered evidence is accordingly affirmed, and the order denying the motion for a new trial upon the minutes reversed and the motion granted, without costs to either party in this court, upon payment by appellants of the costs and disbursements included in the judgment.

FOLLETT, J., concurred; VAN BRUNT, P. J., dissented.

So ordered.