THOMAS H. SYMINGTON, Appellant, *v.* IDA MAY SYMINGTON, Respondent.

First Department, February 26, 1926.

**Husband and wife — divorce — proof sufficient to submit question of defendant's adultery to jury — error for court to direct verdict for defendant under Civil Practice Act, § 457-a — fact that corespondents were known to plaintiff although he alleged that they were not known to him, does not require dismissal of complaint — evidence — letters written by defendant to plaintiff after separation and just before and just after commencement of action cannot be excluded under Civil Practice Act, § 349.**

In an action for absolute divorce on the ground of the defendant's adultery, the evidence was sufficient to show that defendant's relations with one of the corespondents were of such a character, although no direct proof of adultery was shown, as to justify the court in submitting to the jury the question of defendant's guilt with that corespondent, and as to the other corespondent, the evidence was sufficient to warrant the court in submitting the question to the jury, since it appears that that corespondent testified to adulterous relations with the defendant and that his testimony was corroborated to a certain extent by a disinterested witness, and, therefore, it was error for the court to direct a verdict in favor of the defendant under section 457-a of the Civil Practice Act.

The mere fact that the court might not have believed the testimony of the corespondent who testified to adulterous relations with the defendant did not justify the court in refusing to submit the question to the jury.

The fact that the plaintiff in his verified complaint alleged that the defendant had committed adultery with certain corespondents unknown to him, whereas, in fact, he did know the names of both corespondents at the time the complaint was verified, is not a ground for dismissing the complaint.

Letters written by the defendant to the plaintiff after they had separated, one of which was written five days before and the other nine days after the action was commenced, were not such confidential communications between husband and wife, within the meaning of section 349 of the Civil Practice Act, as precluded their admission in evidence.

APPEAL by the plaintiff, Thomas H. Symington, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 10th day of August, 1925, as resettled by an order entered in said clerk's office on the 28th day of August, 1925, upon the verdict of a jury rendered by direction of the court.

*Gordon, Weed & Young* [*George Gordon Battle* of counsel; *John Wallace Young* and *Gordon Gordon* with him on the brief], for the appellant.

*Max D. Steuer* [*Max D. Steuer* of counsel; *Gerald B. Rosenheim* with him on the brief], for the respondent.

McAVOY, J. The learned trial court directed a verdict in behalf of the defendant in this cause, which was an action for absolute divorce on the ground of adultery in which the issues were framed for answer by the jury in respect to these charges of adultery. The charges cover the period from January, 1923, to April, 1924. Mrs. Symington lived in New York city in 1923. She and her husband had a town apartment there on the fourth floor of an apartment house on East Sixty-third street, Manhattan. The parties also lived at times in Morristown, N. J., and moved between the two houses as their fancy dictated. The adulteries charged are (a) with a corespondent known as Maurice Fatio, both at what was called at the trial the " cottage " in Morristown, and at the apartment in Manhattan, and (b) with the corespondent, Talbot W. Chambers, at the apartment on March 16 and 17, 1924, and at the apartment of Chambers himself at 180 East Seventy-fifth street, Manhattan, on March eleventh of the same year.

Mr. Symington was abroad from January, 1923, to April seventeenth of that year, and it was during his absence that these alleged intimacies with Fatio are said to have occurred. It was shown that Fatio had visited Palm Beach, Fla., in February, 1923, at a place where Mrs. Symington was stopping, and had been present again when Mrs. Symington was in Palm Beach from Christmas, 1923, to March, 1924. She lived then with her eleven-year-old daughter and a maid in an apartment in the Everglades Club. When Mr. Symington left her in Palm Beach, Fatio, according to the testimony, resumed his sojourn at that resort.

Mr. Symington's business took him to Baltimore, Md., a great

deal of the time, as he had a research laboratory there for the development of new devices in railroad supplies, and he claims his wife, as charged, was guilty of the various derelictions with the corespondents not only while he was in Europe, but also while he was absent in Baltimore.

There are very many irregular methods of conduct shown in respect of defendant's relations with Fatio, such as visiting in the bedroom in the early morning and going about the household in the presence of Mrs. Symington in negligee costume, and the evidence of their relations in other respects was such as would have justified the learned trial court in submitting to the jury the question of defendant's guilt with Mr. Fatio, although there was no direct proof of actual misconduct, nor were the circumstances of their meetings of such a character as inevitably to warrant a conclusion of *delictum.* A jury risk of belief was presented. With respect to the charges involving Mr. Chambers, there was proof by his own testimony of adulterous acts. He testified that he had improper relations with plaintiff's wife at her apartment on the night of March 16, 1924, and at his apartment earlier in the same week. There were also corroborating circumstances, to wit, the elevator man saw him entering the place with the defendant at eleven o'clock at night and observed him leaving between one and one-thirty the following morning. However, this was not necessary, as it was indeed admitted that Mr. Chambers did drive in from Morristown, N. J., in a motor car with Mrs. Symington and go into the apartment with her and take a drink of Scotch whisky. She contended that he left immediately thereafter, and he asserted under oath that he was guilty of adultery with her at that time. The testimony of Chambers, and the proof of his presence at her home of the witness Hackett, met the legal requirements of proof of the commission of adultery, and when contradicted by the defendant, created an issue which should have been submitted to the jury.

Counsel for the defendant on the argument conceded this to be the law and admitted that unless the court had power to direct a verdict at this trial under section 457-a of the Civil Practice Act (as added by Laws of 1921, chap. 372) which permits a verdict to be directed against a party if, on the evidence adduced, the jury could not reasonably declare the facts proven sufficient to establish the case, then this judgment based on that verdict could not be affirmed.

The proof in this case is not such as could be said to be so inconclusive and shadowy as to, in effect, amount really to no evidence at all. It is direct proof by a person most familiar with the

happening of the event, and whether or not the learned court believed Chambers, the law did not permit the court to substitute its judgment on such belief for that of the accredited jurymen, who were impaneled to pass on these issues of fact framed by the court.

The question, therefore, whether or not section 457-a of the Civil Practice Act is constitutional or not does not now arise under this proof, since we determine that in no event could it have been applied to the facts in this case. Defendant, however, urges that if this verdict cannot be allowed to stand, because the proof offered justified a submission of the issues to the jury, the complaint should have been nevertheless dismissed because plaintiff, although he knew the names of the corespondents at the time that he swore to the complaint, verified that pleading while it contained a statement that the corespondents were to him unknown. However, in the case of *Miller* v. *Miller* (194 App. Div. 183) this court reversed a judgment dismissing the complaint upon the ground that the proof showed the name of the corespondent, which the complaint alleged was unknown, was in fact known to the plaintiff. While the rule is that the party charging adultery must state the name of the person with whom the adultery was committed if the person is known to him, yet there is no statute, rule of practice or decision prescribing a holding that the complaint must be dismissed for failure to comply with this rule of pleading. It may be that defendant would have the right to move to have the plaintiff declare the names of alleged unknown corespondents prior to the trial or to require the service of a bill of particulars setting forth the identity of the persons so described so that they might be identified, or that relief of a similar nature might be granted, but in the absence of any statute or ruling requiring a dismissal of the complaint for this omission, such a judgment cannot be rendered by virtue of any inherent judicial power in the court.

The only other legal point to which we advert discussed by the parties is the question of the admission in evidence of certain letters of the defendant, dated April 27, 1924, and May 11, 1924, which were written to the plaintiff after the parties had separated. One was written five days before and the other nine days after the commencement of this action. They were excluded under the provision of section 349 of the Civil Practice Act prohibiting the disclosure of confidential communications induced by the marital relation between husband and wife because of privilege granted to parties who bear this relation, to freely speak of intimate confidences without the fear of thereafter being confronted in litigious matters with confessions. The statements in the letters in question

could not be said to have been induced by the marital relation. The letters themselves recognized a pending status of separation as a result of the wife's wrong and a possible subsequent divorce arising from the husband's action, which had already been started some nine days prior to the writing of the last letter. The writing of a letter between persons who are married but living apart in a state of hostility, does not *ipso facto* make a writing privileged. (*Parkhurst* v. *Berdell*, 110 N. Y. 386; *Fowler* v. *Fowler*, 33 N. Y. St. Repr. 746; *Norris* v. *Lee*, 136 App. Div. 685.)

The statute does not exclude all communications between husband and wife. There is no doubt but that statements made by one to the other in the presence of a third person would not be privileged. The provision relates only to such communications as are expressly made in confidence, or from their nature and the circumstances of disclosure appear to be so made, or such as spring out of and are induced by the marital relation and are, therefore, confidential in character. These letters marked for identification at the trial do not fall in the category of confidential communications induced by the marital relation, and, therefore, should have been admitted. We conclude, therefore, that the judgment was founded upon a verdict improperly directed and that it should be reversed.

The judgment should be reversed and a new trial ordered.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment reversed and new trial ordered.