ANDREW BOLOGNINO, Plaintiff, *v.* MARIZZA L. BOLOGNINO, Also Known as LUCY BOLOGNINO, Also Known as ALICE BOLOGNINO, Defendant.

Supreme Court, New York County, April 21, 1930.

*Harry S. Bodin* [*Caruthers Ewing* of counsel], for the plaintiff.

*Bernard H. Sandler*, for the defendant.

UNTERMYER, J.   This is a suit for divorce in which sixteen specific allegations of adultery by the plaintiff against the defendant, his wife, were framed for submission to a jury under section 1149 of the Civil Practice Act.   By consent of the parties the court directed the jury to answer questions 1, 3, 4, 5, 7, 12, 13, 14, 15 and 16 in favor of the defendant, and submitted to the jury the six questions which remained.   The jury rendered a verdict in favor of the defendant upon all these issues except question 9, which it answered in the affirmative.   That question was as follows: " Did the defendant commit adultery with one Frank Caforio in Apartment No. 52 at premises No. 391 Central Park West, Borough of Manhattan, City of New York, at divers times between January or February of 1924 and April, 1925? "

The defendant now moves to set aside the verdict concerning question 9 on the ground that the evidence does not justify the finding of the jury.   The plaintiff has not moved to set aside the verdict with respect to those issues which the jury has decided in favor of the defendant.

The plaintiff's evidence directed to question 9 tended to establish that the defendant, between the dates specified, was present frequently at the apartment house and in the apartment where Caforio resided, under circumstances which, if not explained, would justify an inference of adultery.   The defendant admitted that she had spent several nights at this apartment, but testified that on each occasion the plaintiff, also acquainted with Caforio, had spent these nights there with her.   This explanation, if accepted by the jury, would have served to rebut the unfavorable inference necessarily arising from the defendant's presence in Caforio's apartment, and rendered vital the issue whether or not the plaintiff, as the defendant had testified, had spent these nights there with her.

In this situation the defendant called the plaintiff as a witness and interrogated him concerning statements made previously by affidavit with respect to the paternity of their child.   The court deemed this testimony to be immaterial and objections interposed by plaintiff's counsel were sustained.   In consequence, the plaintiff

did not testify to any material fact on direct examination by defendant's counsel. Nevertheless, on cross-examination, in answer to questions by his counsel, he testified that never, except upon a single occasion, had he occupied Caforio's apartment at night. This testimony was not responsive to any evidence elicited on direct examination, and the plaintiff, for that purpose at least, became a witness in his own behalf. Thus, in spite of the prohibition of section 349 of the Civil Practice Act, did the husband offer testimony to establish the adultery of the wife, because, if he was not at Caforio's apartment on these occasions, it was a fair assumption that Caforio was. Both by the specific terms of section 349 of the Civil Practice Act (*Dickinson* v. *Dickinson*, 63 Hun, 516; *Biers* v. *Biers*, 156 App. Div. 409), and by analogy (*Clift* v. *Moses*, 112 N. Y. 426, p. 435), the testimony was inadmissible. Nevertheless no objection was offered to these questions, no motion to strike out was made, no request was made at any time that the court instruct the jury to disregard this evidence, and even upon this motion the question thus presented is not raised.

It is evident that the plaintiff was incompetent to testify to these facts, that his testimony was distinctly prejudicial, and that, in consequence, the verdict concerning question 9 must be set aside unless the defendant may be deemed to have waived the provisions of section 349. I am of the opinion that those provisions could not be waived. They express a principle of public policy binding alike the parties and the court. They were not enacted, nor are they to be enforced for the benefit of the parties merely, but rather to protect the marriage against the action of either party, and particularly against both combined. The right to a divorce being entirely statutory (*Erkenbrach* v. *Ekrenbrach*, 96 N. Y. 456), the Legislature had the same power to prescribe the character of evidence admissible in an action for divorce that it had to prescribe the grounds for divorce, and the court is bound to respect the one no less than the other. Were the rule otherwise such evidence would be admissible in uncontested actions for divorce where the adverse party is not present to object. The statute has perished when this occurs.

If I have correctly read the purpose of this section, it must follow that the parties could not, either by consent or acquiescence, set its prohibitions aside. They could no more do this by omitting to object to testimony declared to be incompetent than they could by default waive objection to a divorce on insufficient grounds. The one as much as the other is a subject of public concern. Speaking of the public interest involved in matrimonial actions, the court in *Winans* v. *Winans* (124 N. Y. 140) said: " ' A divorce

suit, while on its face a mere controversy between private parties of record, is as truly viewed a triangular proceeding *sui generis,* wherein the public or government occupies in effect the position of third party.' And while this third party is not specially represented by counsel, it is for this purpose to be represented and protected by the judges. (*Murphy* v. *Murphy,* 8 Phil. 357.) This third party, so called, had an interest in the prompt prosecution of the action, which the court should have, and we must assume did, regard in its determination." To the same effect are Bishop on Marriage and Divorce (Vol. 2, § 230), Nelson, Divorce and Separation (§ 7), Jones, Commentaries on Evidence (2d ed. § 967), *Grant* v. *Grant* (84 N. J. Eq. 81). It has frequently been held in analogous cases that where a public interest is involved or where the statute is intended to express a principle of public policy its provisions cannot be waived by the parties. (*People ex rel. Battista* v. *Christian,* 249 N. Y. 314; *Oakley* v. *Aspinwall,* 3 id. 547; *Johnston* v. *Fargo,* 184 id. 379.)

This conclusion is fortified by comparison of these provisions of section 349 with the provisions of the same section relating to confidential communications between husband and wife. Disclosure of such communications is only prohibited if "without consent of the other" party, whereas the provisions excluding the testimony of a complaining party on the issue of adultery contain no similar qualification. The same applies to the succeeding sections of the Civil Practice Act (§§ 351, 352, 353), which prohibit the disclosure of confidential communications made to clergymen, physicians and attorneys, but which in section 354 specifies in detail the conditions under which the secrecy imposed by sections 351, 352 and 353 may be waived. Analysis of these sections confirms the view that whenever the Legislature has intended to permit such provisions to be waived it has said so in unmistakable terms.

The precise question appears seldom to have arisen and never to have been decided by the Court of Appeals. In *Fanning* v. *Fanning* (2 Misc. 90), however, decided by the General Term of the Court of Common Pleas, a judgment of divorce was reversed for the reason, in part, at least, that the plaintiff was permitted, although without objection, to give evidence concerning the defendant's adultery. The court said: " True the evidence was received without objection, but it was incompetent evidence, and as guardian of the interests of the public and persons not parties to the record it is our imperative duty to prevent the dissolution of the marriage relation by means which the law condemns and expressly forbids." This case was approved and followed by the Appellate Division of

the Fourth Department in *Taylor* v. *Taylor* (123 App. Div. 220). In *Bevelaqua* v. *Bevelaqua* (202 App. Div. 841), also, the Appellate Division of the Second Department reversed upon this ground, although no adequate exceptions had been taken.

The same principle was applied in *Pratt* v. *Pratt* (2 App. Div. 534), where the court vacated an order of reference appointing a referee agreed upon by the parties in a suit for the annulment of a marriage, in violation of the Rules of Civil Practice, saying: " The law was not enacted, nor was the rule established for the benefit of the parties to matrimonial actions, but for the public good. * * * For this reason the parties are not permitted, as they are in ordinary controversies, to admit the facts, or to waive proof thereof; nor is the court permitted to grant relief upon their consent." And to the same general purport are *Boyer* v. *Boyer* (129 App. Div. 647) and *Greenfield* v. *Greenfield* (215 id. 504). *Valentine* v. *Valentine* (87 App. Div. 156) is not in conflict with these principles, for there the plaintiff's testimony, admitted without objection, was not upon any issue relating to the dissolution of the marriage, but had relation only to the husband's income. Thus no public interest was involved, for the parties were at liberty to agree upon the question of the wife's support.

The verdict on question 9 must, therefore, be set aside. Must the verdict on the remaining fifteen issues for that reason also be vacated, even though the decision of those issues was not affected by the admission of this testimony, and that no motion has been made by the plaintiff to set aside the verdict in this respect? It is true that if the verdict on question 9 alone is set aside there must be at least two trials and two verdicts upon the same complaint, and a situation might exist where there would be sixteen. If, on the other hand, the verdict on every question must be set aside whenever incompetent evidence has been received or the jury has disagreed on a single issue which is not related to any other issue in the case, the result will be the protraction of litigation in every similar case until a record can be made perfect enough, and a jury can be found unanimous enough, to determine on a single trial every issue in the litigation.

I am of the opinion that the verdict on question 9 should be set aside without disturbing the verdicts on the fifteen issues which remain. Each of these issues is distinct from all the others, and each, although isolated, would, if sustained, entitle the plaintiff to a decree of divorce. Each of these issues could have been made the subject of a separate suit (*Minervini* v. *Minervini*, 218 App. Div. 407), in which event a verdict for the defendant, or a disagreement, even in fifteen out of the sixteen suits would not

affect the proceedings in any of the other suits. If the plaintiff should succeed in any one suit it would not matter that error had occurred or that the jury had disagreed in all the others. The situation is not changed because the plaintiff has combined in one action what are in reality sixteen distinct causes of action, each depending upon a different set of facts.

I perceive, therefore, nothing unusual or alarming in the condition which will arise as the result of a retrial of the issue raised by question 9, leaving the verdict on the other issues undisturbed; nor do I find any provision of the Civil Practice Act which discountenances this course. By section 1147 of the Civil Practice Act either party in an action for divorce is entitled to a trial by jury as a matter of right. (*Lowenthal* v. *Lowenthal,* 157 N. Y. 236; *Goldstein* v. *Goldstein,* 212 App. Div. 470.) Section 429 provides that the court, upon the application of either party, must cause the issues to be separately stated. " The subsequent proceedings are the same as where questions arising upon the issues are stated for trial by a jury, in a case, where neither party can, as of right, require such a trial; except that the finding of the jury upon such questions so stated is conclusive in the action unless the verdict is set aside, or a new trial is granted." Section 553 provides in very similar terms for review by a motion for a new trial where specific questions are tried by jury: " Provisions relating to the proceedings to review a trial by a jury by a motion for a new trial, are applicable to the trial by a jury of one or more specific questions of fact arising upon the issues in an action triable by the court. But a new trial may be granted as to some of the questions so tried and refused as to the others, except in a case where a party is entitled by the Constitution or express provision of law to a trial by jury of one or more issues of fact upon applying to the court for an order directing all the questions upon those issues to be plainly and distinctly stated for trial."

Section 430 also provides for a jury trial, but in the discretion of the court, " where a party is not entitled as of right to a trial by jury." This, of course, has reference to suits in equity where the court, using the findings of the jury for the information of its conscience, is at liberty to accept or reject these, either in whole or in part. The responsibility of determining the facts in such cases rests upon the trial judge and the Civil Practice Act has not changed that rule. (*McClave* v. *Gibb,* 157 N. Y. 413; *Birdsall* v. *Patterson,* 51 id. 43; *Vermilyea* v. *Palmer,* 52 id. 471; *Carroll* v. *Bullock,* 207 id. 567.)

Section 429 of the Civil Practice Act, derived from section 970 of the former Code, and section 553, derived in part from section

1003 of the Code, must be construed together in the light of the historic distinction between cases where a jury trial of an issue of fact is a matter of favor and cases where it exists as a matter of right. Bouvier defines an issue as a " single, certain, and material point deduced by the pleadings of the parties which is affirmed on the one side and denied on the other." It is the ultimate fact which may consist of one or more dependent issues of fact. Where there are several issues of adultery, all of which are triable of right by a jury, section 429 makes the finding of the jury on the " questions arising upon the issues " conclusive, " unless the verdict is set aside, or a new trial is granted." In such an action there may be many distinct issues of adultery, each consisting of dependent questions of fact, and the determination of the jury upon each issue thus arising constitutes a separate verdict. Neither section 553 nor section 429 of the Civil Practice Act prevents the court from setting aside the determination of the jury upon any complete issue in the action which constitutes in effect a separate verdict, but prohibits only the rejection of the findings of the jury upon inter-related and dependent questions of fact going to make up such an issue, as may be done in the discretion of the court where a jury trial is a matter of favor and not of right. (*Lavelle* v. *Corrignio*, 86 Hun, 135.)

I have not overlooked the decision in *Smith* v. *Smith* (27 Misc. 252), but I prefer to follow the convincing opinion of O'BRIEN, J., in *Lavelle* v. *Corrignio* (*supra*), where, after the trial by a jury of the issues in a partition suit, the construction of sections 970 and 1003 of the former Code was directly before the court. It was stated by the General Term of the Supreme Court for the First Department that, although a jury trial of the issues was a matter of right, only such of the issues would be set aside as were affected by error and that issues distinct from these would be permitted to stand. The court·said: " We think, as urged by appellants, that the issues in a partition action, being triable of right by a jury, section 970 of the Code of Civil Procedure makes the finding of the jury upon each question of fact arising upon the issues submitted to them conclusive upon the court, unless the verdict is set aside or a new trial is granted; but since in such an action there may be any number of distinct issues, each made up of independent questions of fact, there is nothing to prevent the court from setting aside the verdict of the jury upon any one of these issues, and for this purpose there may be deemed to be as many verdicts as there are issues in the action."

The Court of Appeals in *Smith* v. *Western Pac. Ry.* (203 N. Y. 499) cited this decision and the principle which it expresses with

approval. It said: " In *Lavelle* v. *Corrignio* (86 Hun, 135), while that question was not actually decided it was discussed, and the view expressed that on appeal in a partition action where several distinct and independent issues had been submitted to the jury, one of them incorrectly and the others correctly, a new trial might be granted as to the one without retrial of the others. The legality of such a course of procedure has, however, fairly been affirmed in *Boyd* v. *Brown* (17 Pick. [Mass.] 453, 461); *Kent* v. *Whitney* (9 Allen [Mass.], 62); *Pratt* v. *Boston, H. & L. Co.* (134 Mass. 300); *Leiter* v. *Lyons* (52 Atl. Rep. [R. I.] 78, 81, 82); *McKay* v. *New England, etc., Co.* (44 Atl. Rep. [Me.] 614); *Oberbeck* v. *Mayor* (59 Mo. App. 289, 298)."

The same rule has been established with respect to the procedure to be followed on appeal. Although it has been held that where the judgment appealed from consists of a single adjudication, such as the recovery of a gross sum of money, a new trial must extend to all the issues (*Goodsell* v. *Western Union*, 109 N. Y. 147; *Vernon* v. *O'Bannon Co.*, 86 App. Div. 374), nevertheless, where the judgment consists of distinct parts, so separate and independent in form and nature as to be easily severed and each constitutes, in effect, a distinct adjudication, the appellate court may, on appeal, affirm the judgment except as to that part which is affected by error, granting a new trial as to that part only. (*City of Buffalo* v. *D., L. & W. R. R.*, 176 N. Y. 308.) Similarly, in *Yaw* v. *Whitmore* (66 App. Div. 317) the Appellate Division ordered a new trial to determine the measure of damages only, and in *Schlitz Brewing Co.* v. *Ester* (86 Hun, 22), where there were distinct causes of action, a new trial was ordered to include certain of these only. In *McLear* v. *Balmat* (224 App. Div. 366) a new trial granted for newly-discovered evidence was limited to the issue to which the new evidence related, other issues having been previously determined. There is no reason for requiring the justice presiding at the trial to refuse, under section 549 of the Civil Practice Act, to do that which would be done on appeal if the entire verdict were left undisturbed.

The issues of adultery submitted to the jury in this case were separate and distinct and the new trial should be limited to the specific issue presented by question 9. The rule to the contrary adopted in *Smith* v. *Smith* (*supra*) would result in the retrial of issues which, in my opinion, have already been properly determined, would subject the parties to unnecessary expense and deprive the defendant of ground legally won.

It need only be added that I have not intended to suggest that any collusion existed here. On the contrary, it is abundantly clear

that the issue of adultery was as strongly contested as could be. But this is immaterial. The rule established by the statute (Civ. Prac. Act, § 349) must be measured by its general tendency, rather than by its operation in each particular case. Its efficacy must not depend on the intentions of the parties in waiving its provisions, for if they may be waived here they may be waived also when the good faith of the parties is not so clear.

For the reasons stated the motion to set aside the jury's answer to question No. 9 is granted, the answers of the jury to the remaining question to remain undisturbed.

Settle order on notice.