HELEN GROBIN, Plaintiff, *v.* ALLEN W. GROBIN, Defendant.

Supreme Court, Special Term, Bronx County, April 11, 1945.

*Oliver E. Davis* for plaintiff.

SHIENTAG, J.  The action is by a wife against her husband for a divorce.  The answer of the defendant was withdrawn, and the parties have entered into a stipulation for the payment of alimony for the support of the children of the marriage, which meets with the approval of the court.

When the case proceeded to trial as an undefended divorce action, plaintiff, in addition to other proof of the adultery of the defendant, attempted to identify a letter written to her by her husband after they had separated, in which he confessed the adultery charged. The court, over the protest of counsel for the plaintiff, refused to permit her to testify that the letter was in her husband's handwriting. Thereupon a third party, under no disqualification to testify, identified the handwriting, and the court received the written confession of the husband in evidence. The question is whether those rulings were correct.

Originally, there was a distinction made in the law between the incapacity of one spouse to testify for another, and the privilege not to testify against the other. (2 Wigmore on Evidence [3d ed.], § 601; 8 Wigmore on Evidence [3d ed.], § 2227.) This distinction was lost sight of by the early authorities, Coke in his Commentary upon Littleton pointing out that: "It hath been resolved by the justices, that a wife cannot be produced either against or for her husband". (1 Coke upon Littleton [1832 ed.], ch. 1, § 1, subd. 6b.)

In this State, the law on the subject was codified as early as 1867 when it was enacted that in any action, husband and wife shall "be competent and compellable to give evidence, the same as any other witness". Two exceptions were made: (1) husband or wife were not rendered "competent or compellable to give evidence for or against the other, in any criminal action or proceeding (except to prove the fact of marriage in case of bigamy), or in any action or proceeding instituted in consequence of adultery, or in any action or proceeding for divorce on account of adultery (except to prove the fact of marriage), or in any action or proceeding for or on account of criminal conversion"; (2) "No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage." (L. 1867, ch. 887.) With the further development of the law with respect to the disqualification of a spouse to testify in a criminal proceeding or in an action for criminal conversation, (which latter action has been abolished in this State) we are not here concerned.

In 1876, the Code of Remedial Justice, later known as the Code of Civil Procedure, was adopted in this State. (L. 1876, ch. 448.) Section 831 thereof, so far as is here pertinent, provided: "A husband or a wife is not competent to testify against the other, upon the trial of an action, or the hearing, upon the merits, of a special proceeding, founded upon an alle-

gation of adultery, except to prove the marriage. * * * A husband or wife shall not be compelled to disclose a confidential communication, made by one to the other, during the marriage.'' We see, therefore, that this section removed the common-law disqualification of husband and wife to testify for each other even in a divorce action, or in any action founded upon adultery. It retained, not as a privilege, but as a disqualification, the incompetency of a spouse to testify against the other in any such action or proceeding. (*Bailey* v. *Bailey,* 41 Hun 424; *Biers* v. *Biers,* 156 App. Div. 409.) In 1887, section 831 of the Code of Civil Procedure was amended so as to provide that in an action founded upon adultery a spouse could testify, not alone in proof of the marriage, but to disprove the allegation of adultery. The section was further amended as to confidential communications between husband and wife to read: '' A husband or wife shall not be compelled, or without the consent of the other if living, allowed to disclose a confidential communication made to the other during marriage.'' (L. 1887, ch. 103.)

In 1915, section 831 was further amended by adding the following provision: '' However, if upon such trial or such hearing the party against whom the allegation of adultery is made produces evidence tending to prove any of the defenses thereto mentioned in section seventeen hundred and fifty-eight of this act, the other party is competent to testify in disproof of any such defense ''. (L. 1915, ch. 181.) Section 1758 dealt with the defenses of procurement, connivance, forgiveness, failure to commence action within five years after discovery of adultery, and the adultery of the plaintiff. With the foregoing amendments, section 831 of the Code of Civil Procedure is now found in section 349 of the Civil Practice Act.

In a divorce action today, therefore, husband and wife are under no disability to testify for each other; they are absolutely disqualified and are incompetent to testify against each other except (a) to prove the marriage; (b) to disprove the allegation of adultery; (c) to disprove any proof offered in support of special defenses formerly in section 1758 of the Code and now in section 1153 of the Civil Practice Act. The incompetency to testify against the other spouse in a divorce action is not in the nature of a privilege which may be waived; it is a disqualification as to which the doctrine of waiver has no application. (*Bolognino* v. *Bolognino,* 136 Misc. 656, affd. 231 App. Div. 817.)

In considering the admissibility of adverse testimony of a spouse in a divorce action, there must be borne in mind the

sharp and fundamental distinction between the disqualification of the person to testify and testimony concerning a confidential communication between husband and wife: the former cannot be waived; the latter is a privilege which may be waived.

The confessions of a guilty spouse were always received in evidence; but early in Anglo-American legal history such confessions, because of the likelihood of collusion or the possibility or coercion, were always subject to the most rigid scrutiny, and there developed the practice of not granting relief in a divorce action on a confession of adultery unsupported by any other evidence. The modern rule is said to rest upon what is known as Canon 105, adopted in 1603 at the Convocation of Canterbury: "Forasmuch as matrimonial causes have been always reckoned and reputed amongst the weightiest, and therefore require the greater caution when they come to be handled and debated in judgment, especially in causes wherein matrimony having been in the church duly solemnized is required upon any suggestion or pretext whatsoever to be dissolved, or annulled, We do strictly charge and enjoin that, in all proceedings to divorce and nullities of matrimony, good circumspection and advice be used, and that the truth may (as far as it is possible) be sifted out by deposition of witnesses and other lawful proofs and evictions, and that credit be not given to the sole confession of the parties themselves, howsoever taken upon oath either within or without the court."

In 1857 the ecclesiastical (prerogative) courts were reorganized by statute in England and their secular jurisdiction was transferred to the common-law courts. There seems to be some controversy as to whether this rule of evidence of the ecclesiastical law was taken over by the common-law courts with their new jurisdiction, and, if not, whether there was any common-law rule requiring corroboration for a respondent's confession in divorce (7 Wigmore on Evidence [3d ed.], § 2067, p. 385). Wigmore states that both of those questions were answered in the negative. Bishop in his work on Marriage, Divorce and Separation (Vol. 2, § 711) says that the Canon of 1603 " embodying the law of both the spiritual and temporal tribunals of England as administered when we derived thence our unwritten law, is in spirit and effect, probably in letter also, common law. Our courts have uniformly proceeded upon these principles." However that may be, while in England this rule as to the necessity for the corroboration of confessions of adultery is regarded as one of policy not rigid in its application, in this

State, as the result of numerous decisions commencing at an early date, it has virtually become fixed as a rule of law. (*Betts* v. *Betts,* 1 Johns. Ch. 197; *Madge* v. *Madge,* 42 Hun 524; *Monypeny* v. *Monypeny,* 171 App. Div. 134; *Buchanan* v. *Buchanan,* 229 App. Div. 631; *Fowler* v. *Fowler,* 29 Misc. 670; see, also, 2 Greenleaf on Evidence [16th ed.], § 45; to the effect that corroboration is not an indispensable requirement, see *Williams* v. *Williams and Padfield,* L. R. 1 P. & M. 29; *Billings* v. *Billings,* 28 Mass. 461.)

From the foregoing it seems clear that the court properly refused to permit the wife to identify the husband's handwriting in the letter to her in which he confessed his adultery; such testimony, under the statute, she is disqualified from giving.

The privilege on the ground of a confidential communication between husband and wife has no application here. The letter recognized a status of separation and a possible subsequent divorce, and therefore the confession could not be said to have been induced by the marital relationship or to have been confidential in character. (*Symington* v. *Symington,* 215 App. Div. 553, 557.) Moreover, by his conduct in the divorce action the defendant must be deemed to have waived any claim of privilege

There is a grave question as to whether the letter of confession having been produced by the wife (although the handwriting was identified by a third party competent to testify on that point) comes within the ban of the disqualification set up in section 349 of the Civil Practice Act. In divorce actions the courts are most strict in enforcing the statutory prohibition against allowing either spouse to testify against the other except on matters other than those which are expressly excepted in the statute. (Richardson on Evidence [6th ed.], § 510, and cases cited). A wife would, of course, not be permitted to testify to the confessions if made to her orally. It is true that the production of a document by the wife is in the nature of testimony by her. On the other hand, the fact that she gave a third party information as to the whereabouts of a written confession of adultery, left by her husband at a certain place, would not preclude that third party from producing the letter in court, identifying it and testifying about it.

While the question is by no means free from doubt, I conclude that the letter of confession was properly received in evidence and that it is fully supported by other competent testimony. The case of *Symington* v. *Symington* (215 App. Div. 553, 557, *supra*) heretofore cited, while not entirely analagous, supports

the conclusion here reached. In that contested divorce action, the wife's letters of confession were sought to be used, not as part of the husband's case in chief, but for the purpose of impeaching the wife's credibility on cross-examination after she had denied the allegations of adultery. The Appellate Division reversed the ruling of the lower court which excluded the letters. The opinion of Mr. Justice McAvoy, speaking for a unanimous court, held that this was error, but the opinion turned entirely on the proposition that the communications were not privileged. An examination of the briefs in that case indicates that the letters were objected to, not alone on the ground that they were confidential communications, but that even if the communications were not privileged the husband was disqualified under section 349 from using those letters at the trial. If the Appellate Division had concluded that the production of the letters by the husband constituted the giving of adverse testimony by him in a divorce action, it could not have ruled that the confessions were admissible. The fact that the letters were not used as part of the plaintiff's main case but for the purposes of impeachment on cross-examination, would not affect the legal situation, because the disqualification, if it existed, would apply for all purposes.

The plaintiff, therefore, may have her interlocutory decree of divorce; the custody of the children is awarded to her; alimony will be fixed as stipulated. Settle findings of fact, conclusions of law and interlocutory decree.