## KINGSLEY BOOKS, INC., ET AL. *v.* BROWN, CORPORATION COUNSEL.

No. 107. Argued April 22, 1957.—Decided June 24, 1957.

*Emanuel Redfield* argued the cause and filed a brief for appellants.

*Seymour B. Quel* argued the cause for appellee. With him on the brief were *Peter Campbell Brown* and *Fred Iscol.*

*Ephraim London* filed a brief for the New York Civil Liberties Union, as *amicus curiae,* urging reversal.

*Louis J. Lefkowitz,* Attorney General, *John R. Davison,* Solicitor General, and *Ruth Kessler Toch,* Assistant Attorney General, filed a brief for the State of New York, as *amicus curiae,* urging affirmance.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a proceeding under § 22–a of the New York Code of Criminal Procedure (L. 1941, c. 925), as amended in 1954 (L. 1954, c. 702). This section supplements the existing conventional criminal provision dealing with pornography by authorizing the chief executive, or legal officer, of a municipality to invoke a "limited injunctive remedy," under closely defined. procedural safeguards, against the sale and distribution of written and printed matter found after due trial to be obscene, and to obtain an order for the seizure, in default of surrender, of the condemned publications.[1]

---

[1] "§ 22–a. Obscene prints and articles; jurisdiction. The supreme court has jurisdiction to enjoin the sale or distribution of obscene prints and articles, as hereinafter specified:

"1. The chief executive officer of any city, town or village or the corporation counsel, or if there be none, the chief legal officer of any city, town, or village, in which a person, firm or corporation sells or distributes or is about to sell or distribute or has in his possession with intent to sell or distribute or is about to acquire possession with intent to sell or distribute any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure, image or any written or printed matter of an indecent character,

A complaint dated September 10, 1954, charged appellants with displaying for sale paper-covered obscene booklets, fourteen of which were annexed, under the general title of "Nights of Horror." The complaint prayed

---

which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose; or in any other respect defined in section eleven hundred forty-one of the penal law, may maintain an action for an injunction against such person, firm or corporation in the supreme court to prevent the sale or further sale or the distribution or further distribution or the acquisition or possession of any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph figure or image or any written or printed matter of an indecent character, herein described or described in section eleven hundred forty-one of the penal law.

"2. The person, firm or corporation sought to be enjoined shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial.

"3. In the event that a final order or judgment of injunction be entered in favor of such officer of the city, town or village and against the person, firm or corporation sought to be enjoined, such final order of judgment shall contain a provision directing the person, firm or corporation to surrender to the sheriff of the county in which the action was brought any of the matter described in paragraph one hereof and such sheriff shall be directed to seize and destroy the same.

"4. In any action brought as herein provided such officer of the city, town or village shall not be required to file any undertaking before the issuance of an injunction order provided for in paragraph two hereof, shall not be liable for costs and shall not be liable for damages sustained by reason of the injunction order in cases where judgment is rendered in favor of the person, firm or corporation sought to be enjoined.

"5. Every person, firm or corporation who sells, distributes, or acquires possession with intent to sell or distribute any of the matter described in paragraph one hereof, after the service upon him of a summons and complaint in an action brought by such officer of any city, town or village pursuant to this section is chargeable with knowledge of the contents thereof."

that appellants be enjoined from further distribution of the booklets, that they be required to surrender to the sheriff for destruction all copies in their possession, and, upon failure to do so, that the sheriff be commanded to seize and destroy those copies. The same day the appellants were ordered to show cause within four days why they should not be enjoined *pendente lite* from distributing the booklets. Appellants consented to the granting of an injunction *pendente lite* and did not bring the matter to issue promptly, as was their right under subdivision 2 of the challenged section, which provides that the persons sought to be enjoined "shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial." After the case came to trial, the judge, sitting in equity, found that the booklets annexed to the complaint and introduced in evidence were clearly obscene—were "dirt for dirt's sake"; he enjoined their further distribution and ordered their destruction. He refused to enjoin "the sale and distribution of later issues" on the ground that "to rule against a volume not offered in evidence would . . . impose an unreasonable prior restraint upon freedom of the press." 208 Misc. 150, 167, 142 N. Y. S. 2d 735, 750.

Not challenging the construction of the statute or the finding of obscenity, appellants took a direct appeal to the New York Court of Appeals, a proceeding in which the constitutionality of the statute was the sole question open to them. That court (one judge not sitting) found no constitutional infirmity: three judges supported the unanimous conclusion by detailed discussion, the other three deemed a brief disposition justified by "ample authority." 1 N. Y. 2d 177, 189, 134 N. E. 2d 461, 468. A claim under the Due Process Clause of the Fourteenth Amendment made throughout the state litigation brought the case here on appeal. 352 U. S. 962.

440

Neither in the New York Court of Appeals, nor here, did appellants assail the legislation insofar as it outlaws obscenity. The claim they make lies within a very narrow compass. Their attack is upon the power of New York to employ the remedial scheme of § 22–a. Authorization of an injunction *pendente lite,* as part of this scheme, during the period within which the issue of obscenity must be promptly tried and adjudicated in an adversary proceeding for which "[a]dequate notice, judicial hearing, [and] fair determination" are assured, 208 Misc. 150, 164, 142 N. Y. S. 2d 735, 747, is a safeguard against frustration of the public interest in effectuating judicial condemnation of obscene matter. It is a brake on the temptation to exploit a filthy business offered by the limited hazards of piecemeal prosecutions, sale by sale, of a publication already condemned as obscene. New York enacted this procedure on the basis of study by a joint legislative committee. Resort to this injunctive remedy, it is claimed, is beyond the constitutional power of New York in that it amounts to a prior censorship of literary product and as such is violative of that "freedom of thought, and speech" which has been "withdrawn by the Fourteenth Amendment from encroachment by the states." *Palko* v. *Connecticut,* 302 U. S. 319, 326–327. Reliance is particularly placed upon *Near* v. *Minnesota,* 283 U. S. 697.

In an unbroken series of cases extending over a long stretch of this Court's history, it has been accepted as a postulate that "the primary requirements of decency may be enforced against obscene publications." *Id.,* at 716. And so our starting point is that New York can constitutionally convict appellants of keeping for sale the booklets incontestably found to be obscene. *Alberts* v. *California, post,* p. 476, decided this day. The immediate problem then is whether New York can adopt as an

auxiliary means of dealing with such obscene merchandising the procedure of § 22–a.

We need not linger over the suggestion that something can be drawn out of the Due Process Clause of the Fourteenth Amendment that restricts New York to the criminal process in seeking to protect its people against the dissemination of pornography. It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice. See *Tigner* v. *Texas,* 310 U. S. 141, 148. If New York chooses to subject persons who disseminate obscene "literature" to criminal prosecution and also to deal with such books as deodands of old, or both, with due regard, of course, to appropriate opportunities for the trial of the underlying issue, it is not for us to gainsay its selection of remedies. Just as *Near* v. *Minnesota, supra,* one of the landmark opinions in shaping the constitutional protection of freedom of speech and of the press, left no doubts that "Liberty of speech, and of the press, is also not an absolute right," 283 U. S., at 708, it likewise made clear that "the protection even as to previous restraint is not absolutely unlimited." *Id.,* at 716. To be sure, the limitation is the exception; it is to be closely confined so as to preclude what may fairly be deemed licensing or censorship.

The judicial angle of vision in testing the validity of a statute like § 22–a is "the operation and effect of the statute in substance." *Id.,* at 713. The phrase "prior restraint" is not a self-wielding sword. Nor can it serve as a talismanic test. The duty of closer analysis and critical judgment in applying the thought behind the phrase has thus been authoritatively put by one who

brings weighty learning to his support of constitutionally protected liberties: "What is needed," writes Professor Paul A. Freund, "is a pragmatic assessment of its operation in the particular circumstances. The generalization that prior restraint is particularly obnoxious in civil liberties cases must yield to more particularistic analysis." The Supreme Court and Civil Liberties, 4 Vand. L. Rev. 533, 539.

Wherein does § 22–a differ in its effective operation from the type of statute upheld in *Alberts?* Section 311 of California's Penal Code provides that "Every person who wilfully and lewdly . . . keeps for sale . . . any obscene . . . book . . . is guilty of a misdemeanor . . . ." Section 1141 of New York's Penal Law is similar. One would be bold to assert that the *in terrorem* effect of such statutes less restrains booksellers in the period before the law strikes than does § 22–a. Instead of requiring the bookseller to dread that the offer for sale of a book may, without prior warning, subject him to a criminal prosecution with the hazard of imprisonment, the civil procedure assures him that such consequences cannot follow unless he ignores a court order specifically directed to him for a prompt and carefully circumscribed determination of the issue of obscenity. Until then, he may keep the book for sale and sell it on his own judgment rather than steer "nervously among the treacherous shoals." Warburg, Onward And Upward With The Arts, The New Yorker, April 20, 1957, 98, 101, in connection with *R.* v. *Martin Secker Warburg, Ltd.,* [1954] 2 All Eng. 683 (C. C. C.).

Criminal enforcement and the proceeding under § 22–a interfere with a book's solicitation of the public precisely at the same stage. In each situation the law moves after publication; the book need not in either case have yet passed into the hands of the public. The *Alberts* record does not show that the matter there found to be

obscene had reached the public at the time that the criminal charge of keeping such matter for sale was lodged, while here as a matter of fact copies of the booklets whose distribution was enjoined had been on sale for several weeks when process was served. In each case the bookseller is put on notice by the complaint that sale of the publication charged with obscenity in the period before trial may subject him to penal consequences. In the one case he may suffer fine and imprisonment for violation of the criminal statute, in the other, for disobedience of the temporary injunction. The bookseller may of course stand his ground and confidently believe that in any judicial proceeding the book could not be condemned as obscene, but both modes of procedure provide an effective deterrent against distribution prior to adjudication of the book's content—the threat of subsequent penalization.[2]

The method devised by New York in § 22–a for determining whether a publication is obscene does not differ in essential procedural safeguards from that provided under many state statutes making the distribution of obscene publications a misdemeanor. For example, while the New York criminal provision brings the State's criminal procedure into operation, a defendant is not thereby entitled to a jury trial. In each case a judge is the conventional trier of fact; in each, a jury may as a matter of discretion be summoned. Compare N. Y. City Criminal Courts Act, § 31, Sub. 1 (c) and Sub. 4, with N. Y. Civil Practice Act, § 430. (Appellants, as a matter of fact, did not request a jury trial, they did not attack

---

[2] This comparison of remedies takes note of the fact that we do not have before us a case where, although the issue of obscenity is ultimately decided in favor of the bookseller, the State nevertheless attempts to punish him for disobedience of the interim injunction. For all we know, New York may impliedly condition the temporary injunction so as not to subject the bookseller to a charge of contempt if he prevails on the issue of obscenity.

the statute in the courts below for failure to require a jury, and they did not bring that issue to this Court.) Of course, the Due Process Clause does not subject the States to the necessity of having trial by jury in misdemeanor prosecutions.

Nor are the consequences of a judicial condemnation for obscenity under § 22–a more restrictive of freedom of expression than the result of conviction for a misdemeanor. In *Alberts,* the defendant was fined $500, sentenced to sixty days in prison, and put on probation for two years on condition that he not violate the obscenity statute. Not only was he completely separated from society for two months but he was also seriously restrained from trafficking in all obscene publications for a considerable time. Appellants, on the other hand, were enjoined from displaying for sale or distributing only the particular booklets theretofore published and adjudged to be obscene. Thus, the restraint upon appellants as merchants in obscenity was narrower than that imposed on Alberts.

Section 22–a's provision for the seizure and destruction of the instruments of ascertained wrongdoing expresses resort to a legal remedy sanctioned by the long history of Anglo-American law. See Holmes, The Common Law, 24–26; *Van Oster* v. *Kansas,* 272 U. S. 465; *Goldsmith-Grant Co.* v. *United States,* 254 U. S. 505, 510–511; *Lawton* v. *Steele,* 152 U. S. 133; and see *United States* v. *Urbuteit,* 335 U. S. 355, dealing with misbranded articles under § 304 (a) of the Food, Drug, and Cosmetic Act, 52 Stat. 1044. It is worth noting that although the *Alberts* record does not reveal whether the publications found to be obscene were destroyed, provision is made for that by §§ 313 and 314 of the California Penal Code. Similarly, § 1144 of New York's Penal Law provides for destruction of obscene matter following conviction for its dissemination.

It only remains to say that the difference between *Near* v. *Minnesota, supra,* and this case is glaring in fact. The two cases are no less glaringly different when judged by the appropriate criteria of constitutional law. Minnesota empowered its courts to enjoin the dissemination of future issues of a publication because its past issues had been found offensive. In the language of Mr. Chief Justice Hughes, "This is of the essence of censorship." 283 U. S., at 713. As such, it was found unconstitutional. This was enough to condemn the statute wholly apart from the fact that the proceeding in *Near* involved not obscenity but matters deemed to be derogatory to a public officer. Unlike *Near,* § 22–a is concerned solely with obscenity and, as authoritatively construed, it studiously withholds restraint upon matters not already published and not yet found to be offensive.

The judgment is

*Affirmed.*

Mr. Chief Justice Warren, dissenting.

My views on the right of a State to protect its people against the purveyance of obscenity were expressed in *Alberts* v. *California, post,* p. 476, also decided today. Here we have an entirely different situation.

This is not a criminal obscenity case. Nor is it a case ordering the destruction of materials disseminated by a person who has been convicted of an offense for doing so, as would be authorized under provisions in the laws of New York and other States. It is a case wherein the New York police, under a different state statute, located books which, in their opinion, were unfit for public use because of obscenity and then obtained a court order for their condemnation and destruction.

The majority opinion sanctions this proceeding. I would not. Unlike the criminal cases decided today, this New York law places the book on trial. There is totally

lacking any standard in the statute for judging the book in context. The personal element basic to the criminal laws is entirely absent. In my judgment, the same object may have wholly different impact depending upon the setting in which it is placed. Under this statute, the setting is irrelevant.

It is the manner of use that should determine obscenity. It is the conduct of the individual that should be judged, not the quality of art or literature. To do otherwise is to impose a prior restraint and hence to violate the Constitution. Certainly in the absence of a prior judicial determination of illegal use, books, pictures and other objects of expression should not be destroyed. It savors too much of book burning.

I would reverse.

Opinion of MR. JUSTICE DOUGLAS, joined by MR. JUSTICE BLACK, dissenting, announced by MR. JUSTICE BRENNAN.

There are two reasons why I think this restraining order should be dissolved.

First, the provision for an injunction *pendente lite* gives the State the paralyzing power of a censor. A decree can issue *ex parte*—without a hearing and without any ruling or finding on the issue of obscenity. This provision is defended on the ground that it is only a little encroachment, that a hearing must be promptly given and a finding of obscenity promptly made. But every publisher knows what awful effect a decree issued in secret can have. We tread here on First Amendment grounds. And nothing is more devastating to the rights that it guarantees than the power to restrain publication before even a hearing is held. This is prior restraint and censorship at its worst.

Second, the procedure for restraining by equity decree the distribution of all the condemned literature does violence to the First Amendment. The judge or jury which

finds the publisher guilty in New York City acts on evidence that may be quite different from evidence before the judge or jury that finds the publisher not guilty in Rochester. In New York City the publisher may have been selling his tracts to juveniles, while in Rochester he may have sold to professional people. The nature of the group among whom the tracts are distributed may have an important bearing on the issue of guilt in any obscenity prosecution. Yet the present statute makes one criminal conviction conclusive and authorizes a statewide decree that subjects the distributor to the contempt power. I think every publication is a separate offense which entitles the accused to a separate trial. Juries or judges may differ in their opinions, community by community, case by case. The publisher is entitled to that leeway under our constitutional system. One is entitled to defend every utterance on its merits and not to suffer today for what he uttered yesterday. Free speech is not to be regulated like diseased cattle and impure butter. The audience (in this case the judge or the jury) that hissed yesterday may applaud today, even for the same performance.

The regime approved by the Court goes far toward making the censor supreme. It also substitutes punishment by contempt for punishment by jury trial. In both respects it transgresses constitutional guarantees.

I would reverse this judgment and direct the restraining order to be dissolved.

Mr. Justice Brennan, dissenting.

I believe the absence in this New York obscenity statute of a right to jury trial is a fatal defect. Provision for jury trials in equity causes is made by § 430 of the New York Civil Practice Act,[1] but only for discretionary jury trials,

---

[1] Gilbert-Bliss' N. Y. Civ. Prac., Vol. 3B, 1942, § 430.

448

and advisory verdicts, to be followed or rejected by the trial judge as he deems fit and proper.[2]

In *Alberts* v. *California* and *Roth* v. *United States*, decided today, *post*, p. 476, the Court held to be constitutional the following standard for judging obscenity—whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. The statutes there involved allowed a jury trial of right, and we did not reach the question whether the safeguards necessary for securing the freedoms of speech and press for material not obscene included a jury determination of obscenity.

The jury represents a cross-section of the community and has a special aptitude for reflecting the view of the average person. Jury trial of obscenity therefore provides a peculiarly competent application of the standard for judging obscenity which, by its definition, calls for an appraisal of material according to the average person's application of contemporary community standards. A statute which does not afford the defendant, of right, a jury determination of obscenity falls short, in my view, of giving proper effect to the standard fashioned as the necessary safeguard demanded by the freedoms of speech and press for material which is not obscene. Of course, as with jury questions generally, the trial judge must initially determine that there is a jury question, *i. e.*, that reasonable men may differ whether the material is obscene.[3]

I would reverse the judgment and direct the restraining order to be dissolved.

---

[2] *Learned* v. *Tillotson*, 97 N. Y. 1; *Bolognino* v. *Bolognino*, 136 Misc. 656, 241 N. Y. Supp. 445 (Sup. Ct.), aff'd, 231 App. Div. 817, 246 N. Y. Supp. 883.

[3] *Parmelee* v. *United States*, 72 App. D. C. 203, 205, 113 F. 2d 729, 731; *United States* v. *Dennett*, 39 F. 2d 564, 568.