Desmond, J.
(concurring). Appellants, the State Board of Regents, have banned the motion picture “Lady Chatterley’s Lover ” as being “immoral” within the special definition of that word in subdivision 1 of section 122-a of the Education Law, that is, as being a film ‘1 which portrays acts of sexual *366 immorality * * * or lewdness ’ ’ and which. ‘ ‘ presents such acts as desirable, acceptable or proper patterns of behavior ”. Since the theme and content of this film fairly deserve that characterization, the Regents acted within their express statutory powers in refusing to license it for exhibition. That, however, does not decide this lawsuit.
The question for decision is the one that has troubled our court and other State courts as well as the United States Supreme Court in a long series of litigations (from Mutual Film Co. v. Ohio Ind. Comm., 236 U. S. 230 [1915], to Times Film Corp. v. City of Chicago, 355 U. S. 35 [1957]) involving State or municipal censorship of movies. Our problem is whether this statute insofar as it imposes prior restraint on the showing of this film in New York State offends against the free speech guarantee of the First and Fourteenth Amendments to the United States Constitution. In arriving at our answer we must perform a double duty. We must abide by the decisions of the supreme Federal judicial tribunal so far as pertinent and at the same time we must be reluctant to strike down a solemn legislative enactment on the ground of unconstitutionality, for that we may do “ only as a last resort ” (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555). I am voting to reverse here and to uphold this denial of a license because this New York statutory definition of “immoral” carefully and quite recently devised by chapter 620 of the Laws of 1954 to meet constitutional objections (see Matter of Commercial Pictures Corp. v. Board of Regents, 305 N. Y. 336, revd. 346 U. S. 587) to the use of such wide or vague terms as “immoral” and “tend to corrupt morals ”, is not patently unconstitutional. Furthermore, neither it nor any other State statute closely resembling it has been held invalid by the Supreme Court.
Of course if we had here (as in Brown v. Kingsley Books, 1 N Y 2d 177, affd. 354 U. S. 436) a case of hard core out-and-out pornography, our task would be simple enough. In Joseph Burstyn, Inc., v. Wilson (343 U. S. 495, 502) the Supreme Court rejected the absolutist idea that “The Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places ”. And, more specifically, in Roth v. United States (354 U. S. 476 — a criminal prosecution) the court flatly announced that “ obscenity is not within the area of *367 constitutionally protected speech” (p. 485, and see our similar holding in Matter of Excelsior Pictures Corp. v. Regents, 3 N Y 2d 237). “ Obscene material ”, the Supreme Court told us in Roth (supra, p. 487), is “ material which deals with sex in a manner appealing to prurient interest ’ ’. But ‘ ‘ prurient interest” is subjective and various. The movie we are here dealing with, while it has for its main or only theme illicit sexual congress, is a film version of a novel of great fame by an eminent author and, says the Supreme Court, “ The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional freedom of speech and press” (Roth opinion, p. 487). The old Eichlin (Regina v. Hicklin, L. R. 3 Q. B. 360) test which examined into the publication’s effect on “ particularly susceptible persons ” has been finally rejected (Roth opinion, p. 489). Now given the Supreme Court’s approval is this test for obscenity: 1 ‘ whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest ” (Roth opinion, p. 489). That criterion is roughly the same as the one presented in Butler v. Michigan (352 U. S. 380, 382), that is, the influence of the product on a normal adult. I confess my own inability to determine whether or not an average person, applying to “Lady Chatterley’s Lover” the undiscoverable standards of a hypothetical community would consider that the dominant theme of the whole film appealed principally to prurient interest or to artistic sensibilities or to a mature and adult interest in one of the lively arts. But one sure result of the Roth decision was to disappoint both the extreme liberals who had hoped to spread the First Amendment’s blanket over all speech whether obscene or not, and the extremists at the other end who despite the pluralist character of our society would make of the law a policeman enforcing their own ideas of morality and propriety.
Helpful as are the Roth decision’s explanations of the constitutional limits of speech and press freedom (and see, also, Alberts v. California, 354 U. S. 476, and Kingsley Books v. Brown, 354 U. S. 436, decided by the court on the same day), there are still large areas of uncertainty. The publications which were the subject matter of Roth, Alberts and Kingsley *368 were actually pornographic and salacious, utterly lacking in “ social importance ” or value (Roth opinion, p. 484). So the Supreme Court was really passing only on the general constitutionality of State action against obscenity without finding it necessary to set down precise criteria for deciding whether a particular book or picture is obscene. It still remains true that the highest Federal court has never yet upheld any single instance of administrative censorship of a motion picture.
In the Excelsior Pictures case (3 N Y 2d 237, supra) our own court overruled the Regents’ restraint of a nudist movie since the majority of this court considered the picture innocent and innocuous, merely unconventional in that it pictured activities of unclothed family groups in a secluded camp. In January of this year (Sunshine Book v. Summerfield, 355 U. S. 372) the Supreme Court, with no explanation beyond a reference to the Roth case (supra), held invalid the exclusion from the mails of a nudist magazine (also a magazine dealing with homosexuality — One, Inc., v. Olesen, 355 U. S. 371). Presumably, the court having looked at those books simply held them not to be obscene. A few months earlier the court in Times Film Corp. v. City of Chicago (355 U. S. 35, supra) reversed a ban by the Chicago authorities on the French moving picture “ Game of Love ”. That picture was from all accounts sexy in the extreme (see descriptions in the lower court opinions at 139 F. Supp. 837 and 244 F. 2d 432) and it had been denied exhibition under an ordinance condemning movies 11 immoral or obscene ’ ’.
All this recent history suggests that the Supreme Court will insist that censorship for obscenity be “closely confined” (Kingsley Books v. Brown, 354 U. S. 436, 441, supra) especially as applied to works of any literary or dramatic merit or expressing “ideas having even the slightest redeeming social importance — unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion ’ ’ (Roth opinion, p. 484, supra). Similarly, our own State Constitution says that: “ every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right ”. But we are still left with our own stern duty of upholding, if we can on reason and authority, our own State’s statute.
*369 It is of no great importance that the Regents in denying a license here did not use the word ‘ ‘ obscene ’ ’ nor is it necessarily determinative that this film is not obscene in the dictionary sense of being lewd, disgusting or loathsome or dealing directly and foully with the excretory or sexual organs or functions. Our question is whether New York State may. constitutionally refuse exhibition to a film because its subject matter is adultery presented as being right and desirable for certain people under certain circumstances. I confess doubt as to the validity of such a statute but I do not know how that doubt can be resolved unless we reverse here and let the Supreme Court have the final say. Unquestionably, this motion picture would be considered obscene by many not illiberal moralists as objectively evidencing an intent by the author to arouse the viewer by emphasizing the sexually exciting elements of the story, a concept of obscenity not unlike the classic definition in United States v. One Book Called “ Ulysses ” (5 F. Supp. 182, 184; see my article, Legal Problems Involved in Censoring the Media of Mass Communication, in 40 Marquette L. Rev. 38, 55-56).
It still remains that the States have large remaining powers to apply reasonably related remedies to domestic evils (see Butler v. Michigan, 352 U. S. 380, 383, supra). The problem is not one of precise definition of “ prior restraint ” or “ obscenity ” or other word or phrase. A leading authority on legislation says that “ the question should be not one of standards but rather whether censorship should be permitted in the particular case regardless of the wording” (Control of Objectionable Publications — A Drafting Problem, 44 A. B. A. J. 175). To be examined is “ the operation and effect of the statute in substance ” (Near v. Minnesota, 283 U. S. 697, 713; Kingsley Books v. Brown, 354 U. S. 436, 441, supra). The “ operation and effect ’ ’ of subdivision 1 of section 122-a of our Education Law in this instance has been to keep from the screen a. motion picture the theme of which is adultery, alluringly and approvingly depicted. Until the highest national tribunal says otherwise, we should let our statute so operate.
The order should be reversed, with costs in this court and in the Appellate Division, and the determination of the Board of Regents confirmed.