Chief Judge Desmonto (concurring).
I find in this record satisfactory proof that defendant knew the character and content of the magazine which it sold and which is alleged to be obscene. But the larger question is: was this periodical obscene in the sense that the law uses that ancient adjective, which over the centuries has had so many shades of meaning? In other words, does the magazine come within the prohibition of section 1141 of the Penal Law and, if so, is such a prohibition valid within the “obscenity” exception to the First Amendment’s” freedom of speech (Chaplinsky v. New Hampshire, 315 U. S. 568, 571, 572)?
Not only is the meaning and application of the term “ obscene” doubtful and controversial, but from the writings of the canon law specialists of old to the modern opinions of the United States Supreme Court the one point of universal agreement is that precise definition is impossible. This is one of the law questions where, as Samuel Johnson observed: “Definitions are hazardous ”, and yet a workable test is available and accepted.. The intrinsic nature, tendency and bent of the work determines whether it is to be banned or its vendor punished. An eminent moral theologian explains, quite consistently with the controlling American decisions: ‘ ‘ For a book to be prohibited it is necessary that from its whole tenor the author’s intention is evident of teaching the reader about sins of impurity and arousing him to libidinousness ” (Noldin, De Preceptis Dei et Ecclesiae, p. 658). St. John-Stevas, one of the soundest and sanest of today’s writers on the law of obscenity, says that: ‘ ‘ A pornographic book * * * is one deliberately designed to stimulate sex feelings and to act as an aphrodisiac ” (Obscenity and the Law, p. 2; cf. Roth v. United States, 354 U. S. 476, 486, 487). The identical thought is in Judge Woolsey’s famed *589 Ulysses opinion (United States v. One Book Called Ulysses, 5 F. Supp. 182, affd. 72 F. 2d 705; 707) and in Justice Bbenxait’s famous phrase: 1‘ dominant theme of the material taken as a whole appeals to prurient interest” (Roth v. United States, supra, p. 489). The inquiry for the court, therefore, is whether the publication is so entirely obscene as to amount to ‘ ‘ hard-core pornography ” (not necessarily dealing with deviate sex relations since while there is a pornography of perversion, “ pornography ” is not limited to the depiction of unnatural acts).
And who is to decide what is the dominant theme of a particular book or picture or play? The Supreme Court has given us a sufficient answer: ‘1 the average person, applying contemporary community standards ” (Roth v. United States, 354 U. S. 476, 489, 490, supra).
Grounded in logic, good morals and precedent is that part of the rule which looks to the “ dominant theme” (see United States v. Limehouse, 285 U. S. 424; Kingsley Books v. Brown, 354 U. S. 436; Kingsley Pictures Corp. v. Regents, 360 U. S. 684; Matter of Excelsior Pictures Corp. v. Regents of Univ. of State of N. Y., 3 N Y 2d 237, 242). The other part of the rule, which takes into account contemporary community standards, is historically sound also. From the earliest records of our civilization we know that pornographic writings and pictures have been always in circnlation and that from the days of ancient Greece and Borne through the period of English ecclesiastical court jurisdiction and common-law times until the present there have been many rises and falls, sudden or gradual, in the levels of community acceptance of sex-concerned books, illustrations and plays. Each change has in turn affected the contemporary law as to obscenity.
Applying the two-element test leaves one at least in reasonable doubt as to whether this magazine can fairly be called “ pornographic ” using that term as describing the extreme form of gross and all-intentioned sexuality which American statutes and courts may constitutionally punish as criminal. This collection of sexy fiction and illustrations has little of literary merit or artistry and yet it is not in the First Amendment sense filthy or disgusting or deliberately corruptive or offensive to common decency under prevailing standards of taste. Virtuous adults will reject it (as all of us Judges would were we not restrained *590 by the Roth-Alberts legal test). Adolescents may be hurt by it. But our prepossessions are not the law and the reactions of children are not valid tests (Roth v. United States, 354 U. S. 476, 489, 490, supra).
Law in a pluralist society does not regulate literary standards or give expression to the loftiest virtues. Civil court decisions in such cases must be prudential, must be acts of practical judgment in the social order of our time and place. ‘1 Human law cannot prohibit everything which the Natural law prohibits ” (St. Thomas Aquinas, 700 years ago, in Summa Theologica, I-II, q. 96, art. 2, ad. 3) but must take full measure of human nature and current traditions. We follow the best ancient and modern legal thought and obey the spirit of our national charter when we interpret strictly—that is, liberally in favor of freedom— laws which restrict the right of free speech (Canon Law, canon 19; Matter of Excelsior Pictures Corp. v. Regents of Univ. of State of N. Y., 3 N Y 2d 237, 246, supra).
The order should be affirmed.