**ART THEATER GUILD, INC., d/b/a Studio Art Theater, and William Kendall, Appellants,**

v.

**STATE of Tennessee ex rel. Lloyd A. RHODES, Appellees.**

**CAMBIST FILMS, INC., Appellants,**

v.

**STATE of Tennessee ex rel. Ronald A. WEBSTER, Appellees.**

Supreme Court of Tennessee.

Feb. 19, 1974.

W. J. Michael Cody, Burch, Porter & Johnson, Frierson M. Graves, Jr., Heiskell, Donelson, Adams, Williams & Wall, Memphis, for appellants.

David M. Pack, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., of Tennessee, Nashville, for appellees.

Edward E. Davis, Chattanooga, amici curiae, for the Tennessee District Attorney's General Conference.

OPINION

W. M. LEECH, Special Justice.

The two above styled cases were consolidated for oral arguments because the same issues were involved in both. It results, therefore, that only one opinion will be necessary to dispose of both cases.

The first of the two causes involved in this opinion arose out of proceedings which began in Memphis, Tennessee, on

March 28, 1970, when the District Attorney for the Fifteenth Judicial Circuit petitioned the Criminal Court of Shelby County for an injunction to prohibit the exhibition, display or possession of alleged obscene material, namely the movie film *"Without a Stitch"*. On the same date, a temporary injunction was issued against said film. This injunction was issued *ex parte* and Art Theater Guild had no notice of the proceeding nor an opportunity to be heard before the restraint. Subsequently, on July 30, 1970, the trial judge found the film obscene and in violation of T.C.A. §§ 39–3003 to 39–3007; and therefore issued a permanent injunction. Thereupon, defendant, Art Theatre Guild, appealed direct to this Court wherein we sustained the trial court. Our decision was appealed to the United States Supreme Court and on June 25, 1973, that Court vacated our judgment and remanded the cause for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

The companion case involved in this opinion arose out of proceedings which began in Knoxville, Tennessee on February 26, 1972, when the District Attorney for the Third Judicial Circuit petitioned the Knox County Criminal Court for a temporary restraining order to prohibit the further showing of the alleged obscene film *"Cry Uncle."* Said order was issued on the same date *ex parte* and without notice to the defendant, National General Corp. Subsequently, on March 6, 1972, a temporary injunction was issued and on May 3, 1972, the film was found to be obscene and was permanently enjoined. The film was also ordered destroyed pursuant to T.C.A. § 39–3005.

On June 1, 1972, Cambist Films, Inc., appellant herein, filed a petition alleging it was the owner of the film and prayed it be made a party-defendant under Rule 19 of the Tennessee Rules of Civil Procedure. On June 2, 1972, without objection, Cambist Films, Inc. was made a party-defendant and appeal was then brought direct to this Court. After hearing arguments, we sustained the trial court. A second petition to rehear was filed and granted on July 24, 1973 so this Court could reevaluate our previous decision in light of *Miller*, supra.

The pivotal issue involved in the two cases herein is whether our definition of obscenity as set out in T.C.A. § 39–3007, is constitutional under the latest pronouncement of the United States Supreme Court in Miller v. California, supra. Our statute provides:

> *"39–3007. Definition of obscene material.*—The following definition shall control in construing §§ 39–3003—39–3008:
>
> Obscene material: Any material, matter, object or thing, including but not limited to, any written or printed matter, film, picture, drawing, or any object or thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if in addition, (a) it is patently offensive to the public or if it goes substantially beyond customary limits of candor in describing or representing such matters, and (b) it is devoid of any literary, scientific or artistic value and is utterly without social importance. The phrase 'predominant appeal' shall be considered with reference to ordinary persons."

This definition and the definition given by the United States Supreme Court in Memoirs v. Massachusetts, 383 U.S. 413, 86 S. Ct. 975, 16 L.Ed.2d 1 (1966), are almost identical. In *Memoirs,* the plurality held that in the definition:

> " . . . as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual

matters; and (c) the material is utterly without redeeming social value." *Id.*, 383 U.S. at 418, 86 S.Ct. at 977.

In *Miller,* the *Memoirs* test was applied until the case reached the Supreme Court. Thereupon, Chief Justice Burger, writing for the majority, stated that the California statute incorporating the three-pronged test of *Memoirs* "has been abandoned as unworkable by its author and no member of the Court today supports the *Memoirs* formulation." The clear repudiation of *Memoirs* is further evidenced by the Court's own language, wherein they stated:

> "While *Roth* [354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 1498] presumed 'obscenity' to be 'utterly without redeeming social value.' *Memoirs* required that to prove obscenity it must be affirmatively established that the material is '*utterly* without redeeming social value.' Thus, even as they repeated the words of *Roth,* the *Memoirs* plurality produced a drastically altered test that called on the prosecution to prove a negative, i. e., that the material was '*utterly* without redeeming social value' a burden virtually impossible to discharge under our criminal standards of proof."

Thus, in repudiating the *Memoirs* test, it is clear that the Supreme Court has also repudiated T.C.A. § 39–3007 because the two tests or definitions are identical.

This latter conclusion is further buttressed by comparing California's definition of obscenity with that of this jurisdiction. The statute found unconstitutional by *Miller,* Section 311 of the California Penal Code, provides in pertinent part that:

> "(a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description

or representation of such matters and is matter which is utterly without redeeming social importance.

> "(b) 'Matter' means any book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials."

By even a casual perusal of both Section 311 of the California Penal Code and T.C. A. § 39–3007, supra, it is clear that they are for all practical purposes identical. Thus, for purposes of the instant cases, whatever *Miller* said concerning California's statute applies equally to T.C.A. § 39–3007 and we are bound thereby.

In Miller, the Court set out the basic test for obscenity as follows:

> "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the pruient interest. (Citing cases). (b) whether the work depicts or describes, in a patently offensive way, *sexual conduct specifically defined* by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *We do not adopt* as a constitutional standard the '*utterly without redeeming social value*' test of Memoirs v. Massachusetts, *supra,* 383 U.S. at 419, 86 S.Ct. 975 (1966); that concept has never commanded the adherence of more than three Justices at one time." (Emphasis added).

■ This jurisdiction's test which incorporates the "utterly without social importance" term and which fails to specifically define any sexual conduct does not comply with the Supreme Court's test. Thus, it must be obvious, even to laymen, that T.C. A. § 39–3007 is unconstitutionally vague and over-broad.

■ By implication, the State urges this Court to take the examples in *Miller* and construe our statute as incorporating those examples, rather than holding it unconstitutional.[1]

The authority by which this could be accomplished is said to be found in footnote 7 of United States v. 12 200-foot Reels, 413 U.S. 123, 93 S.Ct. 2665, 32 L.Ed.2d 500 (1973). However, a careful examination of footnote 7 indicates that the United States Supreme Court merely said that they, as the ultimate construer of *Federal legislation* may construe, if they so desire, existing language to comply with *Miller*. However, more importantly that footnote indicates that Congress should specifically enunciate the "hard core" depictions of sexual conduct as quickly as possible. In view of this latter reading of footnote 7, we fail to find any basis for doing anything other than holding T.C.A. § 39–3007 unconstitutional and leaving it to the legislature to adopt a new obscenity statute which fully complies with all the requisites of Miller v. California, *supra*. Moreover, for this Court to do anything more would have the effect of our rewriting Tennessee's present obscenity statute. The function of this Court is to interpret a statute against the constitution of this State and that of the United States and we will not and cannot usurp the prerogatives of the legislature by supplying essential elements to a statute which have been omitted by that body.

In conclusion, therefore, pursuant to the clear holding of the United States Supreme Court in Miller v. California, *supra,* we declare and hold T.C.A. § 39–3007 to be unconstitutional. Having so held, we pretermit all other issues involved herein and reverse the holdings of the respective trial courts involved in this opinion; remanding these cases to the trial courts for disposition in a manner not inconsistent with this opinion.

DYER, C. J., and CHATTIN, McCANLESS, and FONES, JJ., concur.

## OPINION ON PETITION TO REHEAR

W. M. LEECH, Special Justice.

The State filed an earnest and forceful petition to rehear in these cases, presenting additional authorities not previously cited to this Court. Several of these decisions have been made subsequent to our original research. From a careful perusal of these cases, it is evident that a state of confusion exists as to *Miller's* effect on obscenity statutes similar to ours.

There is however no confusion or question in our minds that the specificity required by *Miller* is not written into T. C. A. 39–3007. Moreover, this conclusion is conceded by the State and by the courts of other jurisdictions wherein similar questions have been considered. The question then is what can this Court do about the lack of specificity.

In *Miller*, the United States Supreme Court said:

"We emphasize that it is not our function to propose regulatory schemes for the States. *That must await their concrete legislative efforts.*" (Emphasis added).

Thus, do we have the power to say that overbroad language is in fact specific, or that which is vague and uncertain is in fact clear and definite? We think not.

1. However, the United States Supreme Court stated therein that:

"*We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts.* It is possible however, to give a few plain examples of what a *state statute* could define for regulation under the second part (b) of the standard announced in this opinion, supra:

"(a) Patently offensive representations or descriptions of ultimate sexual acts normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." (Emphasis added).

If these two cases were all that were involved herein we might be inclined to accept the State's theory and write the *Miller* language into our statute because it is our opinion that these films are obscene. However, we cannot so act because the legal precedent would in the future create confusion and uncertainty in other fields of legislation, and would therefore do more harm than good. This is especially true here because the legislature can easily supply the necessary language to satisfy the specificity requirement of *Miller*. Thus, we reaffirm all that we said in our original opinion as to the constitutionality of our statute since *Miller* and refer the matter to the legislature for appropriate action.

Since the filing of our original opinion in these cases, we have considered a number of new cases. It is impossible to reconcile all of these decisions, thus we have approached the problem carefully and with the following statement made in Roth v. United States, and quoted in *Miller* in mind:

> "Our duty admits of no substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case."

Having approached the State's petition to rehear in this manner, we think that we originally overlooked the fact that when this Court originally decided Art Theater Guild, Inc. v. State ex rel. Rhodes, 469 S.W.2d 669 (Tenn.1971), the plurality holding in *Memoirs* was all that this Court had upon which to base its opinion.

We might add that in all of the cases from other affected states the courts, while recognizing the well established principle that obscene materials when specifically defined by statute can be prohibited, the required specificity is the subject of a wide range of dispute, and there is much confusion among the courts as to the effect of *Miller* on existing statutes. Some states have held that *Miller* was both prospective and retrospective in its application, while others have held that specificity can be read into a statute and its constitutionality upheld, both prospectively and retroactively.

In our original opinion we made no distinction between the prospective and retrospective effect of *Miller* on our statute. We think we should now do so.

In the cases before us the only question we deem material is the constitutionality of T.C.A. § 39–3007. All other questions addressed to us at this time were correctly decided in the opinion of this Court prior to the remand, and on those questions we could not add anything new. Everyone agrees that now more specificity is required.

The Louisiana Supreme Court, in the case of State v. Shreveport News Agency, Inc., 287 So.2d 464 (1973), held *Miller* to apply both prospectively and retroactively, and in the majority opinion stated, "We have properly concluded that it is not in this Court's province to write an obscenity law for the State of Louisiana but rather the State Legislature." To the same effect is the opinion of the Indiana Supreme Court.

The right to prohibit the distribution of obscene materials is clear, however, as stated by Mr. Justice Frankfurter, in Kingsley Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469: "To be sure, the limitation is the exception; it is to be closely confined so as to preclude what may fairly be deemed licensing or censorship." If our statute after *Miller,* without the addition of specificity and the elimination of "utterly without social importance", did not meet the requirements necessary to prevent otherwise constitutionally protected materials from being subject to prosecution, then it lacked the necessary elements prior to *Miller*, and we do not think that we have the right to write into a statute a definition that is not included in the statute. If the language were ambiguous and susceptible of two meanings, certainly, we

would construe the statute so as to uphold its constitutionality, but where language is omitted that is necessary to protect the rights of constitutionally protected materials, we do not have the right to add the language. The petition to rehear is denied.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.