**FRANKEN EQUITIES, L.L.C., a Wyoming limited liability company, Plaintiff,**

v.

**CITY OF EVANSTON, a Wyoming municipal corporation, Defendant.**

No. 97–CV–87–B.

United States District Court, D. Wyoming.

June 24, 1997.

Timothy C. Kingston, Cheyenne, WY, Jerome H. Mooney, Salt Lake City, UT, Richard L. Wilson, Orlando, FL, for Plaintiff.

Dennis M. Boal, Evanston, WY, Karen A. Byrne, Cheyenne, WY, for Defendant.

## ORDER ENJOINING ENFORCEMENT OF EVANSTON, WYO., CODE § 24–15(b)(20)

BRIMMER, District Judge.

Plaintiff Franken Equities, L.L.C. ("Franken") filed a motion for preliminary injunction asking the Court to enjoin the enforcement of an Evanston City ordinance that requires a conditional use permit to operate an "indoor amusement and video establishment." Defendant City of Evanston ("Evanston") opposes Franken's motion and filed its own motion for summary judgment.

### Background

Franken operates an adult bookstore in Evanston and desires to add on-premises viewing of adult videotapes to its stock in trade. The addition of on-premises video equipment would cause Franken's store to be classified as an indoor amusement and video establishment. Evanston, Wyo., Code § 24–15(b)(20). Franken's location is properly zoned for an indoor amusement and video establishment, however, all indoor amusement and video establishments require a conditional use permit. Evanston, Wyo., Code § 24–15.

On December 17, 1996, Franken filed its petition for a conditional use permit. The Evanston Planning and Zoning Commission reviewed the petition at a public hearing on January 6, 1997. At the hearing, numerous Evanston residents spoke against the application based on the content of the materials to be viewed. Also the Commission received a petition with approximately 1,000 signatures opposing "pornography" in Evanston. Several Commission members spoke in opposition to the adult materials Franken proposed to exhibit.

On January 23, 1997, the Planning and Zoning Commission found that the proposed adult video arcade was not compatible with the surrounding land uses. The Commission unanimously denied Franken's application.

During the April 25, 1997 hearing on Franken's motion for preliminary injunction, the Court queried whether the preliminary injunction hearing and the trial on the merits should be consolidated pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. The parties acceded to the consolidation because there are no issues of material fact requiring a trial on the merits. *See Sons of Confederate Veterans, Inc. v. Glendening,* 954 F.Supp. 1099, 1101 (D.Md.1997). Thus, the Court will proceed directly to the merits.

### Analysis

#### I. Standing

■ Initially, the Court must determine whether Franken has standing to mount a facial challenge to the Evanston ordinance. It is well established that overbroad regulation in the area of freedom of expression is subject to facial review, even though it may have been applied in a constitutional manner in a particular case. *Forsyth County, Georgia v. Nationalist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 2400–01, 120 L.Ed.2d 101 (1992); *see also Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 737–38, 13 L.Ed.2d 649 (1965) (holding that one has standing to challenge a licensing scheme "whether or not he applied for a license"). First Amendment jurisprudence departs from the general standing rules because the existence of broadly written laws may chill the protected expression of parties not before the court. *See New York v. Ferber,* 458 U.S. 747, 772, 102 S.Ct. 3348, 3362–63, 73 L.Ed.2d 1113 (1982). Accordingly, Evanston's argument that if the ordinance was constitutionally applied in assessing Franken's application, Franken does not have standing to undertake a facial challenge of the special use permit ordinance is without merit.[1]

---

1. Evanston also argues that res judicata and collateral estoppel bar Franken's facial challenge to the Evanston licensing system. The Court disagrees. The Evanston Planning and Zoning Commission's determination that on-premises video viewing facilities are incompatible with the surrounding land uses failed to even remotely address Franken's constitutional challenge made

here. Because Franken challenges the special use permit requirement on its face, the issues in the two proceedings are completely different. The earlier proceeding did not produce a final judgment on the merits and any factual determinations made by the Commission are irrelevant to the instant dispute. Evanston's argument reveals an unfamiliarity with the concepts of res

## II. Prior Restraint

Franken brought this action pursuant to 42 U.S.C. § 1983 contending that Evanston, Wyo., Code § 24–15(b)(20) violates the First Amendment.[2] Franken contends that the ordinance, by requiring a special use permit before on-premises video viewing facilities may be constructed, imposes an unconstitutional prior restraint on speech because it fails to provide adequate procedural safeguards. The Court concurs.

The First Amendment states in pertinent part that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. 1. While government may regulate the time, place, and manner of protected speech, see *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), any regulation or licensing scheme that places a prior restraint on the exercise of protected expression carries "'a heavy presumption against its constitutional validity.'" *Freedman*, 380 U.S. at 57, 85 S.Ct. at 738 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)). The presumption against the constitutionality of prior restraints is greater than that against restrictions on speech imposed by subsequent penalties. *Vance v. Universal Amusement Co.*, 445 U.S. 308, 315–16, 100 S.Ct. 1156, 1160–62, 63 L.Ed.2d 413 (1980). The Supreme Court has explained the rationale behind the difference in presumptions as follows:

Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, 95 S.Ct. 1239, 1246–47, 43 L.Ed.2d 448 (1975) (emphasis in original).

Government regulation constitutes a prior restraint if it makes enjoyment of protected expression contingent upon obtaining permission from government officials. *See Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931). Prior restraints in the form of licensing schemes abridge the guarantee of freedom of speech when such schemes permit government officials unfettered discretion to grant or deny permission. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223–27, 110 S.Ct. 596, 603–05, 107 L.Ed.2d 603 (1990). Unfettered discretion exists when a licensing system fails to impose adequate safeguards for officials to apply in rendering a decision to grant or deny the required permission or when a regulation fails to impose procedural safeguards that ensure a sufficiently prompt decision.

Evanston argues that the standards announced in *Freedman* and applied to a similar licensing scheme in *FW/PBS* do not apply to the ordinance at issue. Instead, Evanston contends that the special use permit requirement is merely a content-neutral zoning ordinance, and, as a result, that the time, place, and manner analysis applied in *Renton*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), provides the only examination that need be conducted. However, the Supreme Court has made clear since *Renton* that content-neutral time, place, and manner restrictions that require governmental approval prior to engaging in protected speech must be analyzed according to the *Freedman* prior restraints analysis.[3] The

judicata and collateral estoppel. *See Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507 (10th Cir. 1990).

2. The First Amendment applies to the states and their political subdivisions through the Fourteenth Amendment. *City of Ladue v. Gilleo*, 512 U.S. 43, 45 n. 1, 114 S.Ct. 2038, 2040 n. 1, 129 L.Ed.2d 36 (1994).

3. In *FW/PBS*, Justice O'Connor, writing for Justices Stevens and Kennedy, and joined in the

judgment by Justices Brennan, Marshall, and Blackmun, stated that a constitutional licensing scheme must (1) contain specific standards that adequately constrain the licensing authority's discretion and (2) provide for prompt judicial review. *FW/PBS*, 493 U.S. at 229–30, 110 S.Ct. at 606–07. Justice Brennan, joined by Justices Marshall and Blackmun urged the Court to adopt the third *Freedman* procedural safeguard, namely to require the censor to go to court to suppress the speech and bear the burden of proof once in court. *Id.* at 238–42, 110 S.Ct. at 611–14. Jus-

*FW/PBS* Court specifically rejected Evanston's contention when it rejected the position advanced by Justice White and Chief Justice Rehnquist that because the Dallas licensing scheme constituted a content-neutral time, place, and manner restriction, the *Freedman* procedural safeguards were not warranted. Accordingly, the Court rejects Evanston's argument that Evanston, Wyo., Code § 24–15(b)(20) is not subject to prior restraint analysis.

### III. The Procedural Safeguards

#### A. Unbridled Discretion

 Granting government officials unbridled discretion presents an unconstitutional risk of both indefinitely suppressing and chilling protected expression. *See Freedman*, 380 U.S. at 59, 85 S.Ct. at 739. Without specific standards constraining a decisionmaker in determining whether to issue a license, the decisionmaker may exercise its judgment to suppress speech based on content. *See Southeastern Promotions, Ltd.*, 420 U.S. at 553, 95 S.Ct. at 1243–44. Without procedural safeguards that ensure the prompt resolution of applications, parties may conclude that seeking a determination is too burdensome, impermissibly chilling protected expression. *See Freedman*, 380 U.S. at 59, 85 S.Ct. at 738–39. Therefore, to pass constitutional muster a licensing scheme constituting a prior restraint on speech must contain adequate safeguards that prevent arbitrary administration and that ensure expeditious determinations. *FW/PBS*, 493 U.S. at 225–26, 110 S.Ct. at 604–05.

 The Evanston City Code states that the no conditional use application shall be approved unless it

(1) complies with all requirements imposed by this article and with all applicable written rules of the planning and zoning commission; (2) is consistent with the objectives and purposes of this zoning chapter

as declared in this chapter; and (3) is designed to be compatible with surrounding land uses and the area of its location. Evanston, Wyo., Code § 24–42. Because the three criterion that guide the Evanston licensing authority are expressed in the conjunctive, if any one grants unbridled discretion the ordinance is constitutionally unacceptable. Focusing on element (3) above, the Court finds that without a stringent definition of "compatible" any protected speech found objectionable by the Evanston licensing authority may be suppressed.[4] Under the Evanston licensing scheme, the licensor is not required to rely on a list of delineated objective factors. Without objective factors to analyze the licensing authority's decision, judicial review is untenable. Consequently, the Evanston City Code is constitutionally infirm since it grants unfettered discretion to the Evanston licensing authority by failing to provide narrow, objective, and definite standards for use in granting or denying special use permit applications. *See City of Lakewood v. Plain Dealer Publ. Co.*, 486 U.S. 750, 769–72, 108 S.Ct. 2138, 2150–52, 100 L.Ed.2d 771 (1988) (striking down ordinance giving mayor authority to impose "terms and conditions deemed necessary and reasonable" in issuing permits for newspaper boxes); *Forsyth County*, 505 U.S. at 133, 112 S.Ct. at 2402–03 (striking down parade permit ordinance requiring that marchers pay unspecified fees to be determined by government officials).

#### B. Undue Delay

"The core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a *reasonable period of time*, because *undue* delay results in the suppression of protected speech." *FW/PBS*, 493 U.S. at 228, 110 S.Ct. at 606 (emphasis added). Without adequate procedural safeguards ensuring prompt decisions on permit applications, licensing sys-

---

tice O'Connor, joined by Justices Stevens and Kennedy, reasoned that this third *Freedman* requirement was unnecessary because the ordinance was content-neutral and because the applicant had sufficient incentive to pursue a judicial determination. *Id.* at 229–30, 110 S.Ct. at 606–07. The splintered opinion of the *FW/PBS* Court

raises doubt as to the applicability of the third *Freedman* factor.

**4.** At the hearing in this matter, Evanston conceded that the proposed construction of on-site video viewing booths is protected by the First Amendment.

**1238**

tems create the possibility that constitutionally protected expression will be suppressed. *FW/PBS*, 493 U.S. at 226, 110 S.Ct. at 605. A licensing scheme that fails to provide definite limitations on the time within which a decisionmaker must make a determination is constitutionally infirm because the delay compels the speaker's silence. *Riley v. National Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 802, 108 S.Ct. 2667, 2680, 101 L.Ed.2d 669 (1988). Failing to confine the time within which the licensor must act on an application is a species of unbridled discretion that creates a risk of arbitrary suppression. *FW/PBS*, 493 U.S. at 226, 110 S.Ct. at 605.

■ While Evanston concedes that the instant ordinance, by its terms, does not confine the time within which the licensor must rule on an application, Evanston argues that the Administrative Procedures for the Planning and Zoning Commission govern conditional use permit applications and require a decision be rendered within forty-five (45) days. *See* Def.'s Ex. E. Evanston is only partially correct.

Although the Administrative Procedures for the Planning and Zoning Commission govern applications for conditional use permits, *see* Def.'s Ex. E, ch. I, secs. 2 and 3, it does not require that the licensor rule on an application within 45 days. Instead, the licensor must hold a public hearing to consider the application within 45 days of receipt of a complete application. Evanston, Wyo., Code § 24–10(c). Additionally, failure of the licensor to "act within forty-five (45) days *following the closing of the record* of a public hearing for an official submission shall be deemed a denial of such submission." Def.'s Ex. E, ch. III, sec. 2(e) (emphasis added). At a minimum, then, the Evanston licensing authority may suppress protected speech for 90 days. But a closer examination of the ordinance in conjunction with the procedural rules of the Planning and Zoning Commission reveals that the licensor may suppress protected expression indefinitely.

Neither the ordinance nor the procedural rules indicate when or how the record closes. The ordinance and procedural rules also grant the licensing authority several proce-

dural tools that would aid an attempt to delay rendering a final decision on an application the Commission deemed objectionable. The Commission "may delay or table the action if it determines further information must be submitted...." Evanston, Wyo., Code § 24–10(c). Further, the licensing authority may take a case under advisement and render a decision "within the due and proper time following consideration of all the matters presented at the hearing." Def.'s Ex. E, ch. III, sec. 1(d)(7) (incorporated by sec. 2(a)). Finally, the licensor has the authority to "recall all interested parties for further information, as it may deem necessary to render an effective decision...." Def.'s Ex. E, ch. III, sec. 2(c). Because neither the ordinance nor the procedural rules define when the record closes and the 45 day deadline begins, the Court must assume that these additional procedural tools given to the Commission may be exercised prior to the closing of the record. Accordingly, the Evanston licensing scheme allows the licensor to delay a decision a minimum of 90 days, and *if the licensor chooses to utilize the various procedural tools discussed above, it could delay granting or denying an application for a conditional use permit indefinitely.* Although the Court's analysis is hindered by the loosely drafted ordinance and procedural rules, the Court finds that the Evanston licensing scheme fails to constrain the time within which the Commission must render its decisions.

**C. Prompt Judicial Review**

■ Finally, Franken challenges the Evanston licensing scheme based upon the prompt judicial review requirement as articulated in *FW/PBS*. Since the *FW/PBS* decision, at least two courts of appeals concluded that prompt access to the courts did not satisfy the prompt judicial review requirement. Instead, these courts determined that prompt adjudication is required. *See East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 224–25 (6th Cir.1995); *11126 Baltimore v. Prince George's County, Maryland*, 58 F.3d 988, 998–1001 (4th Cir.1995). Other courts of appeals found that prompt access to the courts satisfies the prompt judicial re-

view requirement. *See Graff v. Chicago*, 9 F.3d 1309, 1324–25 (7th Cir.1993) (en banc); *TK's Video v. Denton County*, 24 F.3d 705, 709 (5th Cir.1994); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir.1993). As the Tenth Circuit has not addressed this issue, the Court must determine which line of cases is more soundly reasoned.[5]

After a thorough review of the current case law, the Court concludes that the prompt judicial review requirement mandates prompt judicial resolution rather than mere access to the courts within a brief period. As previously demonstrated, the *FW/PBS* Court failed to provide a majority opinion regarding the proper standard for prompt judicial review. It is well settled that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)). Because Justice O'Connor's opinion did not garner five votes, *FW/PBS* did not modify *Freedman*. Accordingly, this Court must look to earlier Supreme Court precedent, including *Freedman*, for guidance.

In *Freedman*, the Supreme Court found procedures that allowed up to four months for a judicial decision did not provide for sufficiently prompt judicial review in the film censorship context. 380 U.S. at 55, 59–60, 85 S.Ct. at 738–40. The Supreme Court stated that "[a]ny restraint imposed in advance of a final judicial determination on the merits must ... be limited to ... the shortest fixed period compatible with sound judicial resolution." *Id.* at 59, 85 S.Ct. at 739. The Supreme Court compared the Maryland procedures struck down in *Freedman* with those

in a New York statute that was upheld in *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957) (requiring a trial one day after the joinder of issues and a final judicial determination within two days after the trial). *Freedman*, 380 U.S. at 60, 85 S.Ct. at 739–40; *see also Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 690 n. 22, 88 S.Ct. 1298, 1306 n. 22, 20 L.Ed.2d 225 (1968) (holding that a provision requiring final judicial determination within nine days of the administrator's ruling constituted prompt judicial review); *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 372–74, 91 S.Ct. 1400, 1406–07, 28 L.Ed.2d 822 (1971) (holding that a three month delay in judicial determination was unacceptable). In addition to this precedent, this Court notes the obvious inconsistency in finding that mere access to the courts somehow safeguards the suppression of protected expression. If a party is granted immediate access to the state courts upon an adverse administrative ruling, but the state courts, often with elected judges, are given no deadline for rendering decisions, protected speech is necessarily abridged pending final judicial resolution.[6]

The Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16–3–114 (Michie 1977), in conjunction with Wyoming Rule of Appellate Procedure 12, govern the judicial review of decisions rendered by the Evanston Planning and Zoning Commission. As an initial matter, the Evanston Planning and Zoning Commission falls within the Wyoming Administrative Procedure Act's definition of agency. Wyo.Stat.Ann. § 16–3–101(b)(i) (Supp.1996), and Wyo.Stat.Ann. § 16–3–114(a) provides for judicial review of agency decisions. An aggrieved party may apply for judicial review within 30 days of the final agency determination. Wyo.R.App.P. 12.04. Upon its own motion or in response to a party's motion, the reviewing court may certify constitutional questions to the Wyoming Supreme Court. Wyo.R.App.P.

---

5. It is readily apparent why this issue engenders such confusion. As discussed in footnote 3, the splintered *FW/PBS* opinions failed to produce a majority on several key issues including the appropriate standard to satisfy the prompt judicial review requirement of *Freedman*.

6. If an applicant wishes to bring a constitutional challenge to a given ordinance, either facially or as applied, judicial review may, of course, be sought in the federal courts.

1240

12.09(b). The reviewing court must notify the parties whether it will certify any questions to the Wyoming Supreme Court within 60 days of the filing of a petition for review. *Id.* In all cases not certified to the Wyoming Supreme Court, the reviewing court may fix a briefing schedule and hear oral argument *in its discretion.* Wyo.R.App.P. 12.09(c) (emphasis added). In accordance with these rules, a reviewing court has the discretion to delay a judicial decision by denying motions to certify questions to the Wyoming Supreme Court and subsequently setting a leisurely briefing and oral argument schedule. Thus, the Wyoming Administrative Procedure Act in conjunction with the Wyoming Rules of Appellate Procedure fail to satisfy the prompt judicial review requirement established in *Freedman.*

### Conclusion

Based on the foregoing, the Court finds the Evanston licensing scheme constitutionally infirm. By requiring Franken to obtain a *special use permit before constructing on-*premises video viewing booths, the Evanston ordinance constitutes a prior restraint. The Court also finds the Evanston licensing system devoid of the three required procedural safeguards: it grants the licensing authority unbridled discretion, it fails to impose time constraints within which the licensor must grant or deny an application, and it fails to assure prompt judicial review. As a result, Evanston, Wyo., Code § 24–15(b)(20) is unconstitutional insofar as it applies to activities protected by the First Amendment. Accordingly, Evanston's motion for summary judgment is **DENIED** and the City of Evanston is hereby **PERMANENTLY ENJOINED** from enforcing Evanston, Wyo., Code § 24–15(b)(20) against Franken Equities, L.L.C.